THE STATE EX REL. GUERGUIN V. F. W. McALISTER.

No. 294.

**City Elections—Constitution—Voters.**

Section 3, article 6, of the Constitution of this State, prescribes: "All qualified electors of the State, as herein described, who shall have resided for six months immediately preceding an election within the limits of a city or corporate town, shall have the right to vote for mayor and all other elective officers; but in all elections to determine the expenditure of money or assumption of debt, only those shall be qualified to vote who pay taxes on property in said city or incorporated town," etc. Section 33 of the charter of the city of San Antonio provides: "The city council shall be composed of the mayor and aldermen, one alderman to be elected from each ward by the voters thereof, and four aldermen to be elected by the voters of the city at large." This section of the law is not unconstitutional; and the Legislature has the power to make the aldermen of a town or city elective by wards in whole or in part or by the city at large...... .............. ... 287

QUESTION CERTIFIED from Court of Civil Appeals for Fourth District, in an appeal from Bexar County.

*J. C. Childs*, for appellant.

*Camp & Umscheid, Peter Shields*, and *R. B. Minor*, for appellee.—The provisions of section 33 of the charter of the city of San Antonio (as amended March 4, 1885) which restrict the right of suffrage of voters in each ward to voting for ward alderman of that ward, are in conflict with section 3 of article 6 of the Constitution, and therefore void. Const., art. 6, sec. 3; Charter of City of San Antonio, as amended March 4, 1885, Acts 1885, sec. 33; The State ex rel. Morris v. Wrightson, 22 L. R. A., 548; The State ex rel. Allison v. Blake, 25 L. R. A., 480; The State v. Constantine, 51 Am. Rep., 833.

BROWN, ASSOCIATE JUSTICE.—Section 33 of the charter of the city of San Antonio reads as follows:

"Section 33. The city council shall be composed of the mayor and aldermen, one alderman to be elected from each ward by the voters thereof, and four aldermen to be elected by the voters of the city at large. * * * The aldermen elected as representatives of the different wards shall be residents thereof at least six months prior to the election," etc.

Question: "Is the above section of the city's charter unconstitutional in providing for the election of aldermen from the several wards by the vote of the wards respectively?"

Article 6, section 3, of the Constitution of this State, is in the following words:

"Section 3.   All qualified electors of the State, as herein described, who shall have resided for six months immediately preceding an election within the limits of any city or corporate town, shall have the right to vote for mayor and all other elective officers; but in all elections to determine the expenditure of money or assumption of debt, only those shall be qualified to vote who pay taxes on property in said city or incorporated town," etc.

The law in question must be held to be valid, "unless the Constitution expressly or by necessary implication forbids its enactment." Lytle v. Halff Bros., 75 Texas, 132.   In determining the question of the constitutionality of an act of the Legislature, the intention of the framers of the Constitution must be ascertained by considering the entire section, as well as the circumstances under which it was adopted. Cool. Const. Lim., p. 70.

At the time the Constitution was adopted, the law of 1875, entitled "An act regulating the incorporation of cities of one thousand inhabitants and over," etc., was in force, the fifth section of which provided for the election of aldermen of cities by the electors of each ward of the city.   Laws 1875, p. 113.   After the adoption of the Constitution, the laws were revised by a commission and adopted by the Legislature in 1879, and the section referred to was copied literally into the Revised Statutes, being article 346.   The commissioners for revision of the laws, in their report to the Legislature, said in reference to title 17, Cities and Towns, "the substance of the old law is retained," etc., showing, that by construction of the revisers and the Legislature, this law was not repealed by the Constitution.

At the time the Constitution was adopted there were many cities and towns in the State organized under the law of 1875, and under special acts, in which the same provision, in substance, for electing aldermen was embraced.   In fact, it was the well known and common method of city government.   The effect that is claimed for the Constitution in this particular would have operated to annul all such provisions in the general law and in the special charters, thus changing the established plan of municipal government.   The purpose to destroy a system of municipal government so common in the State will not be attributed to the convention that framed the Constitution, unless the language used is so certain as to compel such a construction by the courts.

Before examining the particular section in question, we will notice an argument made, to the effect that the Legislature of 1876, the first held after the convention adjourned, construed this section in accord with the claim of appellee.

In an act entitled "An act regulating elections," approved August 23, 1876, the Legislature simply embodied in the statute the third section of article 6 of the Constitution.   It is no construction of the Constitution; but if to be considered as a construction, we think that the legislation of that session upon this subject, taken as a whole, would militate against the claim of appellee.   If it had been intended to change the manner of electing aldermen, the Legislature would certainly have provided another mode, which it did not do, but left the old law in force.   At the same session (1876) the Legislature amended the charter of the city of Houston, in which the section of the Constitution under consideration was substantially copied, and in a subsequent section provided, "that each ward in the city shall be represented in the city council by two aldermen, elected by the qualified voters of each ward, who shall vote only in their respective wards." Special Laws 1876, p. 44, sec. 7.   A similar provision is found in the charter of the city of Dallas, granted at that session (Laws 1876, p. 74, sec. 5); and at the same session the Legislature granted a new charter to Galveston, in which the same method of electing aldermen is prescribed.   Laws 1876, p. 8, sec. 5.   Thus we see, that the construction placed by the first Legislature which assembled after the adoption of the Constitution is to the effect that the section under consideration did not interfere with the election of aldermen by wards, for assuredly the Legislature would not have embraced the constitutional provision in these charters and at the same time prescribed a manner of electing officers in conflict with the Constitution, as the members of that body understood it.

The contemporaneous construction of the Constitution by the Legislature being against the claim of the appellee in this case, what weight should be given to that construction?   Mr. Cooley says:   "Indeed, where a particular construction has been accepted as correct, and especially where it has occurred contemporaneously with the adoption of the Constitution, and by those who had an opportunity to understand the intention of the instrument, it is not to be denied that a strong presumption exists that the construction rightly interprets the intention.   And where this has been given by officers in the discharge of their official duties, and rights have accrued in reliance upon it which would be divested by a decision that the construction was erroneous, the argument ab inconvenienti is sometimes allowed to have very great weight."   Cool. Const. Lim., p. 81.   We think that this rule is specially applicable to those matters which are political, as the creating and regulation of municipal corporations, where the legislative branch of the government has placed a construction upon the provisions of the Constitution relating thereto.

We have been cited to a number of cases to sustain the contention that the act is unconstitutional.   We will notice those most in point.

Morrison v. Wrightson, 22 Lawyers Reports Annotated, 548, arose under the Constitution of New Jersey, in which it was prescribed,

that "the general assembly shall be composed of members elected annually by the legal voters of the counties respectively," etc. It will be observed that the requirement is, that the members be elected by the voters of the county, which of course means of the entire county. The Legislature divided the counties into assembly districts, and required a given number to be elected from each district.

In re The Newport Charter, 14 Rhode Island, 658, the question arose under the provisions of their Constitution, to the effect that the voters should have the "right to vote at all elections of civil officers," etc. The Legislature restricted the right to taxpayers, and the court held the law unconstitutional.

The Constitution of Ohio secured to each qualified voter the right "to vote at all elections." The Legislature enacted a law by which the city of Springfield was to elect for the entire city four police commissioners; but it was declared in the act that no elector should vote for more than two of the persons to be elected. The Supreme Court held, that this was unconstitutional, and that each elector was entitled to vote for each officer to be elected. In that case, the voters were deprived of the privilege of casting their ballots for some of the officers to be voted for in their district or territory.

These are not parallel cases to the one under consideration. The law assailed in this case secures to every qualified voter the right to vote for all officers to be elected from his ward, which we think was the intention in adopting the Constitution.

The language of article 6, section 3, of the Constitution, indicates the intention of the convention to have been to divide the voters into two classes, and to secure the rights of each upon the two principal subjects of elections: First. In the election of city officers, all of the qualified electors under the Constitution, upon residence in the city for six months prior to the election, were secured in the right to vote. The reason is obvious, because these officers deal with the rights of all citizens alike in the general government of the city. Second. In determining the questions of "expenditure of money and assuming a debt," the right to vote was restricted and secured to those of the people who would bear the burdens of taxation, that they might determine for themselves the purposes for which taxes should be levied upon their property, and the amount to be thus raised.

This section of the Constitution does not prescribe that all elective officers shall be elected by the voters of the entire city, but it simply secures to the voters of each city the right to cast their ballots for all officers to be elected for the particular subdivision of the city for which such officers are chosen.

If, however, there was a doubt as to the proper construction of this language, we must sustain the law in question, under the well established and recognized rule of construction, that courts can not declare an act of the Legislature void unless it be clearly in conflict with the Constitution. Sutherland v. De Leon, 1 Texas, 304; Orr v. Rhine, 45 Texas, 354.

The words, "all other elective officers," mean all such officers of the city as the law might make elective; but this language, when taken in connection with the remainder of the section, does not necessarily mean that every elective officer must be elected by the voters of the entire city.

We answer, that the section of the law referred to in the question is not unconstitutional, and that the Legislature has the power to make the aldermen of a town or city elective by wards, in whole or in part, or by the city at large.

Delivered May 27, 1895.