## EX PARTE HAZEL HART.

### No. 1979.    Decided March 7, 1900.

**Constitutional Law—Corporation Courts.**

The Constitution, article 5, section 1, as amended in 1891, clearly authorizes the creation of corporation courts, it being expressly provided in said amendment that "the Legislature may establish such other courts as it may deem necessary and prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the district and other inferior courts thereto." This amendment is not in conflict with section 18 of article 5, which makes provisions for justices of the peace and the number of justices of the peace to be elected in the counties. Corporation courts are in no sense justices' courts, though within the limits of the cities where they are created they are vested with jurisdiction concurrent with that of justices's courts in offenses arising under our State laws. DAVIDSON, Presiding Judge, dissents.

APPEAL from the County Court of Grayson. Tried below before Hon. J. D. WOODS, County Judge.

Appeal from a judgment on a habeas corpus hearing whereby relator was remanded to custody under a previous conviction in the Corporation Court of the City of Sherman.

No statement as to the original case necessary.

*Barrett, Simmons & Freeman,* for relator, filed an able brief supplemented by the following argument:

If the Corporation Court in the city of Sherman is a State court with jurisdiction to try offenses against the Penal Code of the State of Texas, it is made so by a creative act of the Legislature. If there is any authority for the creation of such court making it a State court with jurisdiction to try State offenses, it is found in the opinion of Mr. Justice Henderson, in the case of Coombs v. State, 40 Texas Criminal Reports, 672, in which is found the following: "I am not prepared to say that the municipal courts can not be habilitated, and brought into our judicial system, and made to do double service both as municipal and State courts." We must submit that the act of the last Legislature providing for the creation of such corporation courts, and making them State courts, does not comply with the requirement of that intimation. A corporation court as provided for by the said act depends for its existence upon the existence of a municipal corporation and an ordinance of such municipal corporation creating a municipal court. The laws and Constitution of the State do not provide officers for such corporation courts, but leave that to the action and discretion of the municipal corporation. Fines and costs collected by the officers of said court for violation of State laws are diverted from the treasury of the State into the treasury of the city. This court then presents the anomaly of a State court, not subject to the control of a single State officer, trying offenses against State laws, paying the revenues derived from said court into a city treasury, and punishing convicts by imprisonment in a city prison in custody of a person who has no offical position known to the laws and Constitution of the State, and who is under no bond as a State official. The example of the creation of the Dallas Criminal District Court, cited in said opinion illustrating the idea intended to be conveyed by Judge Henderson, is not analogous to the creation of the corporaton court, and supports our contention above contained. In that case the creative power of the Legislature was exercised in the creation of a court, the number of which is not limited, in conferring upon the court so created no other than the jurisdiction and functions conferred by the Constitution upon that particular class of courts, and providing for the election of officers of such court. It does not allow the diversion of any State fines, and in all things complies with the constitutional requirements for the creation and maintenance of the class of courts to which it belongs.

If it be conceded that the legislative act authorizing the creation and maintenance of corporation courts is constitutional, and if such courts be State courts constituting a part of the judicial system of the State, then it must be conceded that, when created, they must conform to the constitutional requirement for the creation of the State courts. The Constitution grades all offenses and designates the particular court in which each separate grade shall be prosecuted, giving the district court original jurisdiction of all felonies, and county courts ex-

clusive original jurisdiction of a certain grade of misdemeanors, and the justice and county courts concurrent original jurisdiction over all other misdemeanors. See article 5, section 19, State Constitution. Can the Legislature provide for the prosecution of any offense in any court other than the one provided by the Constitution for such prosecution? We submit that a felony can not be prosecuted in any except a district court, and that a misdemeanor over which a justice and county court has jurisdiction can not be prosecuted in any court except a justice and county court. If the Legislature should create any court not a county court with jurisdiction to try the offenses over which a justice court has jurisdiction, would it not be in effect creating a justice court? The Legislature created a court which it is not and can not be contended is a county court, denominated it a corporation court, but conferred upon it the powers and jurisdiction in criminal matters conferred upon justice courts. Then if said corporation court is a State court with any criminal functions at all, it must be in effect a justice court. If a justice court, the creation and maintenance of a corporation court in the city of Sherman violates article 5, section 18, of the Constitution, providing for the creation of justice courts and fixing the number thereof for each precinct; because it is admitted that the corporation court in the city of Sherman is situated in justice precinct No. 1 in Grayson County, and that there were at the time of the creation of such court, and are now, in existence in said precinct, two duly organized and legal justice courts.

We direct the attention of the court to article 5, section 21, of the State Constitution, which says: "The county attorney shall represent the State in all cases in the district and inferior courts in their respective counties." Section 8 of chapter 33 of the general laws relieves the county attorney of the duty of appearing in corporation courts and deprives him of his fees, if he does so appear. It is admitted that the corporation court in the city of Sherman is in Grayson County, which has a duly elected and acting county attorney. This clause of the Constitution was construed in the case of the State v. Moore, 57 Texas, 307, and we think the decision in that case in point.

*G. P. Webb, Wm. P. Ellison,* and *J. J. Collins,* for respondent, filed a most able and elaborate brief and argument which, but for its length, the Reporter would here reproduce. Suffice it to say the points relied upon by them are fully sustained by the majority opinion of the court below.

BROOKS, JUDGE.—Applicant applied to the county-judge of Grayson County for a writ of habeas corpus, asking to be released from illegal imprisonment, alleging that applicant had previously been convicted in the Corporation Court of the city of Sherman, said city being situated in justice precinct No. 1, there being already in existence two justice of the peace courts in said precinct. Applicant charges that

the recorder before whom she was convicted of vagrancy is not an officer of the State of Texas, and not, in his official capacity, in any manner responsible to the said State; that one G. P. Webb has assumed to act as city attorney in said city of Sherman, or as a prosecuting attorney for said corporation court; that said corporation court was created under and by virtue of the act of the Twenty-sixth Legislature entitled "An act to establish and create in each of the cities, towns, and villages of this State a State court to be known as the corporation court of such city, town, or village, and to prescribe the jurisdiction and organization thereof, and to abolish municipal courts". (See Acts Twenty-sixth Legislature, page 40); and that said act is unconstitutional, in that it violates the judiciary article of our Constitution. Upon the hearing of the application, applicant was remanded to the custody of the officers of said city, holding that said applicant was legally held in custody under restraint by J. M. Blaine, chief of police of said city, from which order applicant appeals to this court.

This brings before us for decision the constitutionality of what is known as the "corporation court." This case, together with two others, was submitted by able argument and brief by G. P. Webb, Esq., and W. P. Ellison, Esq., at our late Tyler term, 1899, since which time we have devoted much thought and consideration to the able brief and argument made by them, and have reached the conclusion, so strenuously contended for, that the judiciary article of the Constitution clearly and explicitly authorizes the creation of municipal courts, and in such court applicant was convicted. Were it not for the amount of thought and research displayed by this court in previous decisions holding adversely to the above, and were it not, furthermore, for the importance of the results to flow, we would content ourselves with the above statement. The Constitution of this State, both before and since the amendment of 1891, clearly authorizes the creation of corporation courts. Section 1 of article 5 of the Constitution provides as follows: "The judicial power of this State shall be vested in one Supreme Court, in courts of civil appeals, in courts of criminal appeals, in district courts, in county courts, in commissioners courts, in courts of justices of the peace, and in such other courts as may be provided by law. The Criminal District Court of Galveston and Harris counties shall continue with the district, jurisdiction and organization now existing by law until otherwise provided by law. The Legislature may establish such other courts as it may deem necessary, and prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the district and other inferior courts thereto." This clause of the Constitution is broad enough to authorize the Legislature to create any court correlative with the district and inferior courts, and to give concurrent jurisdiction to said court, provided the Legislature shall conform the jurisdiction of the district and other inferior courts thereto. The Constitution creates one Supreme Court, courts of civil appeals, courts of criminal appeals, district courts, county courts,

commissioners courts, and courts of justices of the peace, and authorizes the continued existence of the Criminal District Court of Galveston and Harris counties. It is impossible to conceive how the Legislature could create a court and conform its jurisdiction to the "district and other inferior courts" unless said created court had a part, or was vested with a part, of the jurisdiction of the district or other inferior courts. Acting under the provisions of the above quoted article of the Constitution, the Legislature, in 1893, passed an act creating and establishing at the city of Dallas a criminal district court, which shall have and exercise all the criminal jurisdiction now vested in and exercised by the district courts of Dallas County. By this act said court was created, and various parties have been tried in said court, and some condemned to death; and this court has uniformly affirmed the verdict and judgment, where authorized under the law, and in no instance has the jurisdiction of said court ever been controverted; nor has it ever been contended that the Constitution did not authorize the creation of such a court. If the Constitution authorized the creation of a court under the jurisdiction of which one can be tried and hanged, certainly the Legislature has the power under the Constitution to create a court with power to fine parties for disorderly conduct. The same provision of the Constitution under which the Criminal District Court of Dallas County was created is the one under which the corporation courts throughout the State were created. This construction of the Constitution is controverted in Leach v. State, 36 Texas Criminal Reports, 250, Ex Parte Ginnochio, 30 Texas Criminal Appeals, 590, and Ex Parte Coombs, 38 Texas Criminal Reports, 654, and they seem to be based in part upon section 18 of article 5 of the Constitution, which provides that in each justice precinct "there shall be elected * * * one justice of the peace and one constable, each of whom shall hold his office for two years, and until his successor shall be elected and qualified; provided that in any precinct in which there may be a city of 8000 or more inhabitants there shall be elected two justices of the peace;" the contention in the above decisions being that this provision of the Constitution limits the justices of the peace to nine, at the utmost, in any county, and that any court having jurisdiction concurrent with the justice of the peace over criminal matters is unconstitutional, because in violation of section 18, for that can not be done indirectly which can not be done directly. In the first place, we do not think there is any conflict between sections 1 and 18, since there is as much difference between a corporation court authorized by the Twenty-sixth Legislature and a justice court as contemplated by the Constitution as there is between a justice court and a county court. The corporation court has simply the concurrent jurisdiction of the justice of the peace in criminal matters over State offenses within the territorial limits of the city, and also has jurisdiction of municipal affairs arising out of the enforcement of the ordinances of the city. The justice court has jurisdiction of criminal

matters coextensive with the limits of the county of all offenses of which the corporation court has jurisdiction, which jurisdiction is confined to the limits of the city; and, in addition, has jurisdiction to try civil matters; and also jurisdiction to try forcible entry and detainer cases. It therefore would be a strained construction to say that the corporation court created under the article in question was a justice court. Concede that section 18 is an inhibition against the creation of other justice courts, still we say that the creation of corporation courts is not creating another justice court, but is in strict line and consonance with the provisions of the Constitution authorizing the Legislature to create such other courts as may be provided by law, and adjust the jurisdiction of said courts to the jurisdiction of the district and other inferior courts. However, if there be a conflict between the two sections of the Constitution above quoted, then, by a well known rule of construction, the instrument must be given such a construction as will uphold, if possible, both provisions of the Constitution; that is, the instrument must be given a construction that will uphold that provision authorizing the creation of "such other courts," and also that authorizing the creation of the nine justice courts as contemplated by section 18. Can this be done? We clearly think so. Judge Cooley, in his work on Constitutional Limitations, in passing upon an apparent conflict in two provisions of the Constitution, uses this language: "If different portions seem to conflict, courts must harmonize them, if practicable, and must lean in favor of a construction which would render every word operative, rather than one which would make some words idle and nugatory. This rule is applicable with special force to written constitutions, in which the people will be presumed to have expressed themselves in careful and measured terms, corresponding with the immense importance of the powers delegated, leaving as little as possible to implication. It is scarcely conceivable that a case can arise where a court would be justified in declaring any portion of a written constitution nugatory because of ambiguity. One part may qualify another so as to restrict its operation, or apply it otherwise than the natural construction would require if it stood by itself; but one part is not to be allowed to defeat another, if by any reasonable construction the two can be made to stand together." Cool. Const. Lim., p. 72. Applying this rational rule of construction to the question before us, we find the following: That the Constitution of 1876 provided that the Legislature shall create "such other courts" as may be provided by law. The Constitution, as amended in 1891, provides, not only that the Legislature may create such other courts as may be provided by law, but goes further, and says that the Legislature shall adjust the jurisdiction of such courts to the jurisdiction of the district and other inferior courts. "It is scarcely conceivable that a case can arise where a court would be justified in declaring any portion of a written constitution nugatory because of ambiguity." There is no ambiguity

here, and to hold this provision of the amended Constitution to be nugatory would not be a judicial construction of a provision of the Constitution, but would be an abrogation of one of the clauses of the Constitution without any construction at all. It is also a well known rule of constitutional construction that the words employed have been used in their natural and ordinary meaning. "The framers of the Constitution and the people who adopt it must be understood to have employed words in their natural sense, and to have intended what they said. This is but saying that no forced or unnatural construction is to be put upon their language, and it seems so obvious a truism that one expects to see it universally accepted without question; but the attempt is made so often by interested subtlety and ingenious refinement to induce the courts to force from these instruments a meaning which their framers never held that it frequently becomes necessary to redeclare this fundamental maxim." Cool. Const. Lim., p. 73.

But it is earnestly insisted that the Constitution, wherein it authorizes the creation of other courts, had reference solely to what are ordinarily denominated "State courts." An effective answer to this proposition is contained in Sutherland on Statutory Construction, section 380, to wit: "As municipal corporations are vested with a portion of the authority which properly appertains to the sovereign power of the State, they must be confined to those powers which are clearly granted, as it is only by such grants that the government proper can delegate its just authority." We do not think it necessary to cite authorities on this question, but deem that the bare statement of the proposition should receive universal assent. However, Judge Cooley, in speaking of this matter, and discussing our American system of decentralization of power,—that is, wherein the States awarded part of their respective sovereign powers to the Federal government, and the States in turn awarded their power to the respective subdivisions of the State,—uses this language: "It is this [that is, this desire to decentralize power] that impels the several States, as if by common arrangement, to subdivide their territory into counties, towns, road, and school districts, and to confer powers of local legislation upon the people of each subdivision, and also to incorporate cities, boroughs, and villages wherever the circumstances and needs of a dense population seem to require other regulations than those which are needful for the rural districts. The system is one which almost seems a part of the very nature of the race to which we belong. A similar subdivision of the realm for the purposes of municipal government has existed in England from the earliest ages; and in America the first settlers, as if instinctively, adopted it in their frame of government, and no other has ever supplanted it, or even found advocates." Cool. Const. Lim., p. 223. Yet, is it not remarkable in the face of such statements from such learned authors, that any court would say that the Constitution which authorizes the creation "of such other courts as may be provided by law" should not have reference to the organiza-

tion of municipal courts, on the theory that the Constitution did 'not contemplate or take into consideration that municipalities were integral parts of the State? A citizen of the city of Dallas is not only a citizen of Dallas County, but is also a citizen of the great State of Texas; and to say that the Constitution of this State never contemplated that the Legislature should create a little court for a city is a construction to which we can not possibly agree. In Ex Parte Coombs, 38 Texas Criminal Reports, 655, we find this remarkable statement, to wit: "Then it may be asserted that the jurisdiction conferred upon municipal courts as a part of the judicial power of the State, finds its right of existence as such in the express provisions of the Constitutions of 1845, 1861, and 1866; and that such right or power was, by omission, abolished by the Constitution of 1869, and has never been incorporated into the judicial system since that time, being omitted from the Constitutions of 1869 and 1876; and in 1891 such corporation courts ceased to exist as a part of said judicial power, and this omission indicates an entire change of policy in this State in regard to the attitude of corporation courts. This omission of corporation courts in the re-enactment of the provisions of the Constitution with reference to the judicial power of this State repeals said courts, and they cease to exist as a part and parcel of the judicial power of Texas." Then we ask, in all seriousness, if this be true, what would have been the political condition existing in Texas if the present Constitution contained no express authority to create any court? or, in other words, if the present Constitution contained no judicial article whatever. If the remarkable statement were true, then, in that event, the Legislature would have no right to create corporation courts, or any other kind of courts. Under our form of government, the State Constitution is an instrument of limitations, and the Federal Constitution is an instrument of delegations; that is to say, the State Legislature can do anything not prohibited by the Federal or State Constitutions, and Congress can not do anything not authorized in its delegated power, to wit, the Federal Constitution. Then, if the present Constitution contained no judiciary article whatever, the people, by their inherent right and power,—which they have never surrendered to any one,—could create any and all character of courts not prohibited by the Federal Constitution. Upon this subject we find the following statement of the above rule laid down in Sutherland on Statutory Construction, section 4: "The whole legislative power delegated to the Federal government is vested in Congress, with the exceptions made in the Constitution, as in the instance of making treaties. Congress has only enumerated powers. The residue is retained by the States, and is vested by their Constitutions in their respective Legislatures, subject to restrictions and limitations in the Federal Constitution and that of the particular State. In creating a legislative department of a State government, and conferring upon it the legislative power, the people must be understood to have conferred the full and complete

power as it rests in and may be exercised by the sovereign power of any country, subject only to such restrictions as they may have seen fit to impose, and to the limitations which are contained in the Constitution of the United States." The fact that provisions of previous Constitutions may have contained express power authorizing the Legislature to create municipal or corporation courts and the present contains no such provision is no argument whatever that the omission of such express authority in the present Constitution is a repeal by implication of the authority heretofore existing in previous Constitutions. Each Constitution is a legal entity independent of, and not dependent upon, any previous Constitution. There might be some plausibility in the statement in the Coombs case, supra, if the rule of construction invoked was being applied to amendments of provisions of the Constitution. But this is not a rule of construction, in the nature of things, that can be applied to a new or independent Constitution. The doctrine of "expressio unius est exclusio alterius" does not apply to State Constitutions. While the doctrine may have some application to the Federal Constitution, it is directly at variance with the theory of State Constitutions, which are limitations upon the powers of government, and under which whatever power is not denied is deemed to exist. "To give but a single illustration, where instances might be multiplied indefinitely: Where a Constitution authorized and directed the Legislature to provide by law for 'the establishment of schools through the State in such manner that the poor may be taught gratis,' it was held that the provision did not (as, upon the principle expressio unius, etc., in its misconceived sense, it undoubtedly would) imply a limitation upon the power of the Legislature to establish a common-school system, free to the rich as well as the poor.'" Endl. Interp. Stats., p. 752. Certainly, to say, as above stated, that because previous Constitutions eo nomine authorized the creation of municipal courts, and that the present Constitution does not so authorize same, is a repeal by implication, is a proposition that we can not, in the very nature of things, assent to; but believe it is at variance with every rule of statutory and constitutional construction.

It has been insisted that perhaps the provision of the corporation court bill, which deprives the county attorney of any fee for representing the State in said court, was unconstitutional. The writer of this opinion does not agree to this contention. However, this is a matter that does not legitimately come within the scope of this decision, but I am of opinion that the following authorities clearly uphold the provision in question: State v. Moore, 57 Texas, 307; State v. Hanscom (Texas Civ. App.), 37 S. W. Rep., 453. We therefore hold that the act creating the corporation courts is clearly within the scope and purview of the State Constitution. Harris County v. Stewart, 91 Texas, 133, and Ex Parte Wilbarger (just decided), ante, p. 514. The judgment is in all things affirmed.

*Affirmed.*

· HENDERSON, JUDGE.—I agree to the conclusion reached, and, for an expression of my views on the question, refer to my opinion in Ex Parte Wilbarger, decided at the present term, ante, p. 514.

(March 14, 1900.)

DAVIDSON, PRESIDING JUDGE (Dissenting).—During my absence the decision of this case was rendered. This accounts for my failure to then note my dissent. Judge HENDERSON agreed to the conclusion reached, and for his views referred to his late opinion in Ex Parte Wilbarger, ante, p. 514. I am somewhat at a loss to understand the attitude of my brethren in regard to the question at issue, as stated in their diverging opinions. But their views explain themselves. Had my Brother BROOKS contented himself with simply basing his opinion upon that expression in section 1 of article 5 which states the judicial power of this State shall be vested in certain named courts, "and in such other courts as may be provided by law," I could have remained silent, as my views upon this question have been fully expressed in Ex Parte Coombs, 38 Texas Criminal Reports, 648; Leach v. State, 36 Texas Criminal Reports, 248; Ex Parte Knox (Texas Criminal Appeals), 39 Southwestern Reporter, 670. The main question at issue in this case was the same as in those cases, and was thoroughly discussed by Judge HENDERSON and myself in the Coombs case, as well as by Judge Brown, for the Supreme Court, in Harris County v. Stewart, 91 Texas, 133. Judge BROOKS uses this language: "The fact that provisions of previous Constitutions may have contained express power authorizing the Legislature to create municipal or corporation courts, and the present contains no such provision, is no argument whatever that the omission of such express authority in the present Constitution is a repeal by implication of the authority heretofore existing in previous Constitutions." This is not a correct statement of the proposition. These Constitutions did not undertake to grant authority to the Legislature to create corporation courts. They simply recognized the existence of such corporation courts as were or might be created by the Legislature, independent of the judiciary article. This was one of the main questions discussed and decided in all the cases supra. As, for example, the Constitution of 1845, in this respect, reads as follows (section 1, article 4): "The judicial power of this State shall be vested in one Supreme Court, in district courts, and in such inferior courts as the Legislature may from time to time ordain and establish, and such jurisdiction may be vested in corporation courts as may be deemed necessary and directed by law." It will be observed on the surface that this Constitution did not authorize the Legislature to create corporation courts, but it simply authorized the Legislature to confer certain jurisdiction upon such corporation courts, the existence of which is directly recognized by the article quoted. Corporation courts in Texas have not depended for their creation or existence upon the judiciary article in the Constitu-

tion. This action of the people in ordaining the Constitution of 1845 simply authorized the legislative body to confer jurisdiction upon such corporation courts as the Legislature either had already created or might thereafter create; and it does recognize the fact that the corporation courts were then existing courts, and that it did not require the authority of the Constitution to justify the Legislature in creating them. It was simply intended to authorize the Legislature to confer jurisdiction upon them; nothing more, nothing less. For a discussion of this question, I refer to the decisions rendered by this court cited above. This further remarkable statement is found in the opinion of Judge Brooks: "Each Constitution is a legal entity, independent of, and not dependent upon, any previous Constitution. There might be some plausibility in the statement in the Coombs case, supra, if the rule of construction invoked was being applied to amendments of provisions of the Constitution. But this is not a rule of construction in the nature of things that can be applied to a new or independent Constitution. The doctrine of 'expressio unius est exclusio alterius' does not apply to State Constitutions. While the doctrine may have some application to the Federal Constitution, it is directly at variance with the theory of State Constitutions, which are limitations upon the powers of government, and under which whatever power is not denied is deemed to exist." While it is true that each Constitution may be regarded as a legal entity, yet, when this statement of Judge Brooks, in its entirety, as above quoted, is looked to, the proposition is evolved that you can not look to prior Constitutions in order to construe a subsequent or new Constitution. I doubt if such a rule can be found outside the opinion of the majority in this case. This matter was reviewed in the Coombs case, supra. Our Supreme Court has recognized this rule in all its decisions where the question came up for adjudication. In Travis County v. Trogdon, 88 Texas, 302, in an elaborate opinion, Judge Denman reviewed the Constitutions of 1836, 1845, 1866, and 1869, in order to ascertain what was meant by a change in that section of the Bill of Rights which relates to the taking of property to be applied to public use, and it was only upon a review of the provisions of all these Constitutions that he was enabled to arrive at what he and the court deemed a just conclusion of the meaning of that section as amended by the Constitution of 1876. All the elementary writers lay down the proposition that, when necessary to do so in construing an existing Constitution, it is proper to look to prior Constitutions. This is especially true when the intention of the people is to be arrived at in making changes in their organic law. This doctrine was expressly recognized by the Supreme Court in Bigby v. City of Tyler, 44 Texas, 351; Holmes v. State, 44 Texas, 631; State v. McAllister, 88 Texas, 284. Applied to statutory enactments, this rule is so well settled that it can not be questioned; and the authorities, elementary as well as the decisions, lay down the proposition that the general rules of interpretation are the same whether

applied to statutes or Constitutions. See authorities collated in the Coombs case, supra; Potter, Dwar. Stats., pp. 654, 657; Cool. Const. Lim., 79 et seq.; Endl. Stat. Const., 509, 518; 6 Am. and Eng. Enc. of Law, 2 ed., p. 930, and notes, for cases.

Now, with reference to the statement of Judge Brooks that "the doctrine of 'expressio unius est exclusio alterius' does not apply to State Constitutions," I have not been able to find an authority that sustains this statement, nor does he cite one in support of it. He relies only upon Endlich on Interpretation of Statutes, page 752, latter clause of section 533. The section cited uses this language: "The maxim, 'Expressio unius est exclusio alterius,' in the sense in which, as has been seen, it is properly applicable to the construction of statutes, is equally so in the interpretation of constitutional provisions. * * * It was said, however, by a late chief justice of Pennsylvania: 'The expression of one thing in the Constitution is necessarily the exclusion of things not expressed. This I regard as especially true of constitutional provisions declaratory in their nature. The remark of Lord Bacon "that, as exceptions strengthen the force of a general law, so enumeration weakens as to things not enumerated," expresses a principle of common law applicable to the Constitution.' No doubt, 'when the Constitution defines the circumstances under which a right may be exercised or a penalty imposed, the specification is an implied prohibition against legislative interference to add to the condition, or to extend the penalty to other cases.' But this proceeds upon the principle that, where a right is given, and the conditions of its exercise are prescribed, by a superior power, an inferior one, charged with acting under and in accordance with it, can not vary or add to those conditions,—a principle obviously alike applicable whether the superior power be the people themselves and the governing rule the Constitution, or whether the superior power be the Legislature and the governing rule a statute." In support of this, the work quoted from cites many authorities. Endl. on Interp. Stats., sec. 533, and authorities collated in notes under said section. See also section 397, et seq. The authorities cited by Judge Brooks not only fail to support him, but are emphatically and unequivocally against the proposition. To the same effect is Potter's Dwarris on Statutes, page 674, where it is said: "Certain maxims and rules of construction adopted or discussed by Judge Story are deserving of consideration in this chapter, among which are 'that a specification of particulars in an instrument is the exclusion of generals;' or, in other words, 'the expression of one thing is the exclusion of another.' And Lord Bacon's remark is cited with approbation, viz., 'that, as exception strengthens the force of a law in cases not excepted, so enumeration weakens it in cases not enumerated.' " In Story on Constitutions, section 448, this language is found: "Another rule of interpretation deserves consideration in regard to the Constitution. There are certain maxims which have found their way not only into judicial discussions, but into the business

of common life, as founded in common sense and common convenience. Thus it is often said that in an instrument a specification of particulars is an exclusion of generals, or the expression of one thing is the exclusion of another." This same author cites with approval the famous remark of Lord Bacon, which is copied in the text by the author. To the same effect is Long v. State, 1 Texas Criminal Appeals, 709, in which this question was at issue. Under the Constitution of 1869 the Legislature had authority to create criminal district courts, and, among other things, did create one for the cities of Waco, Marlin, and Calvert. Whether or not this court existed under the Constitution of 1876 was the issue. Section 1 of article 5 of the Constitution of 1876 provided, among other things, "that the Legislature may establish criminal district courts with such jurisdiction as it may prescribe, but no court shall be established unless the district includes a city containing at least 30,000 inhabitants, as ascertained by the census of the United States, or other official census: provided such town or city shall support such criminal district court when established, excepting out of this provision the criminal district court for the counties of Galveston and Harris." The court held that by reason of this language in the Constitution of 1876 the criminal district court of Waco, Marlin, and Calvert had been obliterated, and placed it upon the maxim, "Expressio unius est exclusio alterius." This doctrine is expressly recognized, so far as I have been able to ascertain, not only by all the courts known to Anglo-Saxon jurisprudence, but by all writers on constitutional law which I have been able to find. See also Black on Const. Law, page 282, sec. 127. All the authorities also lay down the proposition that the court may not only look to prior Constitutions and their history, but may go beyond, and look to the journals showing the proceedings of the conventions which framed the Constitutions, to ascertain the intent and meaning of those who framed the instrument. Cool. Const. Lim., p. 79, et seq.; Potter's Dwar. on Stats., pp. 657, 660; Endl. Interp. Stats., secs. 509, 518; 6 Am. and Eng. Enc. of Law, 2 ed., p. 930, and notes, for cited cases.

Judge BROOKS states that the rule of "expressio unius est exclusio alterius" applies to amendments of Constitutions, but denies the rule is applicable to a succeeding or new Constitution. If it applies to an amendment of a Constitution, it certainly would apply with equal force to a new Constitution, for the amendment takes the place of that portion of the Constitution which has been amended as thoroughly as the new Constitution could take the place of the old. In this respect Endlich on Interpretation of Statutes uses this language in section 517 of his work: "Statutory provisions which have expired or been repealed may, as has been seen, be looked at as aiding the construction of other provisions and enactments in pari materia. Similarly, clauses that have been eliminated from a Constitution by amendment may be referred to in aid of the interpretation of others originally

associated with them and remaining in force. And with equal propriety the differences between the provisions of a new Constitution and those of a previous one, and the construction placed upon the latter when in force, may be regarded by the courts in ascertaining the purpose and real meaning of the new provisions." In support of this text the author cites Houseman v. Commonwealth, 100 Pa. St., 222, 230; Buckelew's Const., Pa., pp. 45, 46; People v. Blodgett, 13 Mich., 147. See also Endl. on Interp. Stats., sec. 397. So, in Texas, it is said, as found in White's Annotated Criminal Procedure, page 33, section 30: "Another rule of construction is that, when the Constitution defines the circumstances under which a right may be exercised, or a penalty imposed, the specification is an implied prohibition against legislative interference to add to the condition, or to extend the penalty to other cases. Holley v. State, 14 Texas Crim. App., 505; Ex Parte Brown, 38 Texas Crim. Rep., 295. So, if the statement made by Judge BROOKS as to amendments of Constitutions is true, by the authorities supporting that proposition the proposition is fully sustained—cogently supported—that it applies to a new Constitution in its entirety. How it could apply to amendment to Constitutions, and not to a new Constitution, I do not understand, for the rules which govern one must necessarily apply to the other.

I have thus hurriedly and crudely stated some of my reasons for dissenting from the opinion rendered by Judge BROOKS. It would have afforded me pleasure, if the crowded condition of the docket would permit the time, to have more thoroughly gone into these matters.