## ROARK et al. v. PRIDEAUX et al.
### (No. 11533.)

(Court of Civil Appeals of Texas. Fort Worth. April 10, 1926. Rehearing Denied May 15, 1926.)

**1. Trial ⚌352(4)—Special issue as to representation in sale of stock should have limited jury to representations alleged in petition.**

Special issue as to whether defendants made any material representations to plaintiffs in sale of stock should have limited jury to representations alleged in plaintiffs' petition, and was objectionable in not doing so.

**2. Fraud ⚌11(2)—Positive affirmation that stock was actually worth more than par value, which was false, held actionable.**

Positive affirmation by sellers that stock they were proposing to sell was at time of sale actually worth more than its par value, which was false, *held* actionable.

**3. Fraud ⚌11(2)—Representation of value as fact may be actionable.**

Ordinarily, the mere expression of an opinion of value to one having equal means of knowledge will not amount to a representation of fact; but, where a party states a matter not as an expression of opinion, but affirms it as an existing fact, material to the transaction so that the other party may reasonably treat it as a fact, and rely and act on it as such, such statement, if false, may be actionable.

**4. Fraud ⚌59(1)—Buyer of stock held presumptively entitled to actual damages, which could not be less than difference between par value of stock and value as asserted at time of purchase (Acts 36th Leg. [1919] c. 43, §§ 1–3 [Rev. St. 1925, art. 4004, and Vernon's Ann. Civ. St. Supp. 1922, art. 3973a, 3973b, 3973c]; Acts 36th Leg. [1919] c. 43, § 4).**

In action for fraud in sale of stock, where it was shown from testimony that promises of defendants to pay future dividends were unfulfilled, under Acts 36th Leg. (1919) c. 43, §§ 1–3 (Rev. St. 1925, art. 4004, and Vernon's Ann. Civ. St. Supp. 1922, arts. 3973a, 3973b, 3973c), and Acts 36th Leg. (1919) c. 43, § 4, plaintiff was presumptively entitled to his actual damages, which could not be less than par value of stock and its value as asserted to be by defendants at time of purchase.

**5. Constitutional law ⚌48.**

Acts of the Legislature will not be declared unconstitutional, unless plainly so.

**6. Statutes ⚌107(1), 109—Term "subject," as used in article requiring that no bill shall contain more than one subject, which shall be expressed in its title, held substantially synonymous with term "object" in like sections of former Constitutions, but less restrictive (Const. art. 3, § 35; Const. 1845, art. 7, § 24; Const. 1866, art. 7, § 24; Const. 1869, art. 12, § 17).**

The term "subject," as used in section 35 of article 3 of the present Constitution requiring that no bill shall contain more than one subject, which shall be clearly expressed in its title, is substantially synonymous with the term "object" as used in former Constitutions (Const. 1845, art. 7, § 24; Const. 1866, art. 7, § 24; Const. 1869, art. 12, § 17, but less restrictive than term "object").

[Ed. Note.—For other definitions see Words and Phrases, First and Second Series, Object; Subject (Of Statute).]

**7. Statutes ⚌107(2), 117(1)—Statute, defining actionable fraud and prescribing rule for damages, held not unconstitutional as containing more than one subject not separately and severally expressed in its title (Acts 36th Leg. [1919] c. 43, §§ 1–3 [Rev. Civ. St. 1925, art. 4004, and Vernon's Ann. Civ. St. Supp. 1922, arts. 3973a, 3973b, 3973c]; Acts 36th Leg. [1919] c. 43, § 4).**

Under Acts 36th Leg. (1919) c. 43, §§ 1–3 (Rev. St. 1925, art. 4004, and Vernon's Ann. Civ. St. Supp. 1922, arts. 3973a, 3973b, 3973c); Acts 36th Leg. (1919) c. 43, § 4, defining what constitutes actionable fraud and prescribing rule for damages, and which contains provisions relative to presumptions, burden of proof, and made several important changes in law of fraud as theretofore generally declared by the courts, *held* not violative of Const. art. 3, § 35, as containing more than one subject which was not expressed in the title; provisions of act relating to same general subject and being reasonably adapted to the accomplishment of its purpose.

**8. Fraud ⚌13(2)—Seller, making positive affirmation of material facts, cannot be excused from consequences because representations were made in good faith.**

Seller, who makes a positive affirmation of material facts relative to the subject-matter of a sale to one without knowledge, and who trusts and relies on such misrepresentations, cannot be excused from the consequences merely because the false representations were made in good faith.

**9. Trial ⚌350(3)—Submission of issue as to whether defendants acted in good faith in making representations held proper, being pertinent and relevant to claim for exemplary damages, in view of statutes (Acts 36th Leg. [1919] c. 43, § 3 [Vernon's Ann. Civ. St. Supp. 1922, art. 3973c]).**

In action for fraud in sale of stock, it was not error to submit whether defendants' representations were made in good faith, inasmuch as such issue was pertinent and relative to plaintiffs' claim for exemplary damages, in view of section 3 of Acts 36th Leg. (1919) c. 43 (Vernon's Ann. Civ. St. Supp. 1922, art. 3973c).

**10. Trial ⚌350(3)—Plaintiffs were entitled to have issue submitted as to whether defendants complied with promise as to future payments of interest, in view of statutes (Acts 36th Leg. [1919] c. 43, § 1 [Vernon's Ann. Civ. St. Supp. 1922, art. 3973a]).**

In action for fraud on sale of stock, where plaintiffs alternatively pleaded for rescission and return of purchase money, they were entitled to have submitted to jury issue as to whether defendants had complied with their promise as to future payments of interest and dividends within reasonable time after purchase, inasmuch

as, under Acts 36th Leg. (1919) c. 43, § 1 (Vernon's Ann. Civ. St. Supp. 1922, art. 3973a), a false promise to do some act in the future, made as a material inducement to enter into contract, is actionable, unless excused as provided in act.

**11. Trial ⚖═350(3)—Plaintiffs, under alternative pleadings, were entitled to have material facts relating to remedies for damages for fraud, and remedy by rescission for recovery of purchase money, submitted and determined by jury, and on which they could then elect and press for judgment on theory best supported by pleadings and findings.**

In action for damages for fraud, while remedy of rescission and recovery of purchase money are contradictory, *held*, that nevertheless plaintiff, who sought recovery in the alternative by their pleadings, are entitled to have all material facts relating to both remedies submitted to and determined by the jury, and on the findings plaintiffs could then elect and press for judgment on the theory of damages or rescission which was best supported by the pleadings and the findings.

Appeal from District Court, Young County; H. R. Wilson, Judge.

Action by B. P. Roark and others against F. A. Prideaux and others. From a judgment for defendants, plaintiffs appeal. Reversed, and remanded for further proceedings.

Marshall & King and S. A. Penix, all of Graham, for appellants.

Mayer, Rowe & Brown, of Fort Worth, and ElMer Graham, of Houston, for appellees.

CONNER, C. J. B. P. Roark, joined by his sons, O. C. and H. M. Roark, and his daughter, Mary F. Roark, instituted this suit against F. A. Prideaux and his four brothers, C. C., E. R., H. O., and J. L. Prideaux, and the Motor Supply Company, in the district court of Young county, to recover the sum of $15,000 paid by B. P. Roark for 150 shares of stock in the Motor Supply Company, a corporation of which said five brothers were the owners, directors, and stockholders at the time of the sale of the stock.

The plaintiffs alleged that they were induced to purchase the stock by means of certain false and fraudulent representations of the defendants relating to the value of the stock, to its earning capacity, etc. It was alleged that the representations so made were false and made knowingly and willfully; and exemplary damages were also sought in the sum of $15,000. The plaintiffs further prayed in the alternative that the sales contract be rescinded and that they recover the purchase money.

The defendants, after presenting numerous exceptions to the plaintiffs' petition, which need not be here noticed, pleaded a general denial, and specially to the effect that the plaintiffs were estopped in that one of the plaintiffs, O. C. Roark, had been elected to and acted as director of the corporation, having full knowledge of the condition of the corporation and of its proceedings, etc.

The defendants' demurrers were overruled and the case was submitted to a jury on special issues, which, together with the jury's answer thereto, are as follows:

"(1) Did the defendants make any material representations to the plaintiff B. P. Roark before or at the time of the purchase of said stock by B. P. Roark which induced said B. P. Roark to purchase the same? Answer: Yes.

"(2) If you answer the preceding issue 'yes,' now answer, Did the plaintiff B. P. Roark rely and act upon such representations, if any, at the time he purchased the stock? Answer: Yes.

"(3) If you have answered the two preceding issues 'yes,' now answer whether or not such representations, if any, were false. Answer: Yes.

"(4) If you have answered issues 1 and 2 in the affirmative, now answer whether or not the defendants acted in good faith at the time of making such representations, if any. Answer: Yes.

"(5) What was the value of the Motor Supply Company stock at the time of its sale to B. P. Roark? Answer: $100 per share.

"(6) Did the plaintiffs ever have a reasonable opportunity to obtain an adequate knowledge of the affairs and condition of the Motor Supply Company? Answer: No.

"(7) Did the plaintiff O. C. Roark, while acting as a director of the defendant company, have full knowledge of the condition and affairs of the defendant company? Answer: No."

Upon the verdict so rendered the court entered his judgment that plaintiffs take nothing and the defendants go hence without day. From this judgment, the plaintiffs have duly prosecuted this appeal.

There was evidence in behalf of plaintiffs tending to show that J. L. Prideaux, the managing officer of the defendant corporation, some time in August, 1922, approached the plaintiff B. P. Roark and sought to interest him in purchasing stock in the defendant corporation; that he represented that for a number of years they had been very successful in the prosecution of their business, but needed more money to enlarge it; that they could double and treble it if they had more money; and they had decided to capitalize it for $90,000 and had chartered it for that sum with $60,000 paid in; that they were sure they would pay 10 per cent. interest and pay that quarterly and at the end of the year they would declare as much as 20 per cent. dividend; that the investment would be "as sound as government bonds or anything of that kind"; that they had a large body of land and over 1,000 head of Hereford cattle back of the business; that the stock, which was of the par value of $100 per share, was in fact worth $108 per share; that for six

years they had been successfully building what they thought to be the best business on earth—the Motor Supply Company—engaged in the wholesale and retail automobile business, with headquarters in Fort Worth, and a branch house at Graham; that the company was a Texas corporation, chartered under state laws, with an authorized capital of $90,-000, divided into 900 shares, of the par value of $100 per share; that they had consistently earned better than 25 per cent. each year, and would guarantee that much profit. Plaintiff testified that defendants gave him references and from what he could learn of the character of the defendants he trusted the representation made and purchased 150 shares of capital stock, paying therefor $15,000 in cash, but that, notwithstanding repeated efforts, he had never been able to secure and receive but a single dividend payment, which was $375 for the first three months after his purchase.

The business of the corporation was that of dealing in motor trucks, and we have given but a brief synopsis of the representations alleged and of which there was evidence tending to support.

The plaintiffs' cause of action for damages seems to have been predicated upon the Act of the Legislature approved March 11, 1919 (Gen. Laws 36th Legislature, c. 43, p. 77) Vernon's Ann. Civ. St. Supp. 1922, arts. 3973a, 3973b, 3973c, Rev. Civ. Statutes 1925, art. 4004. The act appears in the General Laws of the 36th Legislature as follows:

"An act defining what shall constitute actionable fraud in this state, and prescribing a rule for damages to be recovered against persons committing fraud as defined in this act and declaring an emergency. * * *

"Section 1. Actionable fraud in this state with regard to transactions in real estate or in stock in corporations or joint-stock companies shall consist of either a false representation of a past or existing material fact, or false promise to do some act in the future which is made as a material inducement to another party to enter into a contract and but for which promise said party would not have entered into said contract, provided however that whenever a promise thus made has not been complied with by the party making it within reasonable time, it shall be presumed that it was falsely and fraudulently made, and the burden shall be on the party making it to show that it was made in good faith but was prevented from complying therewith by the act of God, the public enemy or by some equitable reason.

"Sec. 2. All persons guilty of fraud, as defined in this act, shall be liable to the person defrauded for all actual damages suffered the rule of damages being the difference between the value of the property as represented or as would have been worth, had the promise been fulfilled, and the actual value of the property in the condition it is delivered at the time of the contract.

"Sec. 3. All persons making the false representations or promises and all persons deriving the benefit of said fraud, shall be jointly and severally liable in actual damages, and in addition thereto, all persons knowingly and willfully making such false representations or promises or knowingly taking the advantage of said fraud shall be liable in exemplary damages to the person defrauded in such amount as shall be assessed by the jury, not to exceed double the amount of the actual damages suffered.

"Sec. 4. The fact that there are now in this state a number of fraudulent land schemes, and that a great number of citizens of this state have been defrauded thereby, and that there is now no comprehensive law protecting citizens of this state from being defrauded by false representations and promises creates an emergency and an an imperative public necessity requiring that the constitutional rule requiring bills to be read on three several days be suspended and that this act take effect and be in force from and after its passage, and it is so enacted."

[1, 2] If this act is valid, we think there can be no doubt that under the articles quoted the plaintiffs, on the verdict of the jury, were entitled to recover at least the actual damages. It will be noted that issue 1, as submitted by the court, did not, as it should have done, limit the jury to the representations alleged in the plaintiffs' petition, but the jury were left at liberty to go beyond the plaintiffs' allegations in considering the representations made, and we cannot therefore say that it affirmatively appears from the issue and the answer thereto what particular representation or representations the jury had in mind and by their verdict affirmed. But no objection appears to have been made to the form of the issue, and the evidence in behalf of plaintiff is at least clear that the defendants in their effort to induce the plaintiff Roark to purchase, made the positive affirmation that the stock they were proposing to sell at the time of the sale was actually worth $8 per share more than its par value. The jury found the stock to be of its par value at the time of the purchase, though there was evidence tending to show that it was worth less than that. The plaintiffs' allegations, supported by the evidence, were to the effect that they were farmers and unacquainted with such business and had no knowledge of its condition.

[3] Ordinarily, the mere expression of an opinion of value to one having equal means of knowledge will not amount to a representation of fact, but it has long been settled that, where a party states a matter, which might otherwise be only an opinion, and does not state it as the mere expression of his own opinion, but affirms it as an existing fact material to the transaction, so that the other party may reasonably treat it as a fact, and rely and act upon it as such, is within the meaning of the general rule, and may, if false, be actionable. The statements which most frequently come within this branch of the rule are those concerning value. Riggins v. Trickey, 46 Tex. Civ. App. 569, 102 S. W. 918, affirmed in 102 Tex. 590; Railway Co. v.

Shuford, 36 Tex. Civ. App. 251, 81 S. W. 1189, affirmed in 98 Tex. 622.

[4] Moreover, as will appear from our statement of the evidence, as briefly as we have stated it, it was apparently shown by the testimony of plaintiffs that promises of future dividends, etc., were not fulfilled, and defendants offered no evidence that such promises were made in good faith and that they were prevented from complying therewith by an act of God, the public enemy, or by some equitable reason. Presumptively, therefore, if the act defining actionable fraud be valid, plaintiff was at least entitled to his actual damages, which, under the findings and the proof, could not have been less than the difference between the par value of the stock and its value as asserted to by defendants at the time of its purchase.

Appellees, however, urgently insist that the act of the Legislature mentioned is violative of section 35, art. 3, of the Texas Constitution, in that it contained "more than one subject, and that the subjects contained therein are not separately and severally expressed in its title." It is insisted that the title to the act does not mention, allude to, or include any presumption of law or of evidence, and does not mention or allude to the burden of proof or the shifting of such burden, and does not mention or allude to the prevention of complying with the promises by the act of God, etc.

It is evident that the act makes several important changes in the law as theretofore generally declared by the courts: (1) In constituting a false promise that was a material inducement to the contract actionable fraud. (2) In making the failure to fulfill such promise within a reasonable time prima facie proof of the fraud. (3) In changing the rule of damages as declared in Smith v. Bolles, 132 U. S. 125, 10 S. Ct. 39, 33 L. Ed. 279, and George v. Hesse, 100 Tex. 44, 93 S. W. 107, 8 L. R. A. (N. S.) 804, 123 Am. St. Rep. 772, 15 Ann. Cas. 456, so as to permit the party defrauded to recover the difference between the value of the property as it actually was at the time of the contract and as it would have been had it been as represented. (4) In conferring the right to exemplary damages under the circumstances declared in the act.

Section 35, art. 3, of the Constitution, reads as follows:

"No bill (except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title. But if any subject shall be embraced in an act, which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

[5] It is the uniform holding of the courts that an act of the Legislature will not be declared unconstitutional unless plainly so.

In Tadlock v. Eccles, 20 Tex. 792, 73 Am. Dec. 213, it was held that the word "object" was not intended in the sense of "provision," for to so hold would require the title to be as long as the act itself, and that the intention of the provision was to prevent embracing in an act, having one ostensible object, provisions having no relevancy to that object, but really designed to effectuate other and wholly different objects, and thus to conceal and disguise the real object proposed by the provisions of an act under a false and deceptive title.

In Austin v. Railway Co., 45 Tex. 234, it was held, in effect, that so long as the provisions of the act are of the same nature and come legitimately under one general denomination or object, it is sufficient.

In Davey v. Galveston County, 45 Tex. 291, it was said that an act with one leading object which is expressed in its title may contain provisions for its enforcement.

[6] The term "subject," used in section 35 of article 3 of the present Constitution, and the term "object" in the like sections of former Constitutions and construed in the cases just cited, are at least substantially synonymous. Indeed, it is plainly inferable that the term "subject" is less restrictive than the term "object." In the case of Stone v. Brown, 54 Tex. 341, our Supreme Court, in construing the section of the Constitution now under consideration, had this to say:

"The Constitution provides that 'no bill * * * shall contain more than one subject, which shall be expressed in its title.' Const. 1876, art. 3, § 35. It may be worthy of note that in the preceding Constitution the word 'object' was used instead of the word 'subject,' in the above connection. Const. 1845, art. 7, § 24; Const. 1866, art. 7, § 24; Const. 1869, art. 12, § 17. It may be presumed that the convention had some reason for substituting a different word from that which had been so long in use in this connection; and that, in the light of judicial expressions, the word 'subject' may have been thus substituted as less restrictive than 'object.'

"In People v. Lawrence, 36 Barb. 192, the Supreme Court of New York say: 'It must not be overlooked that the Constitution demands that the title of an act shall express the subject, not the object, of the act. It is the matter to which the statute relates and with which it deals, and not what it proposes to do, which is to be found in the title. It is no constitutional objection to a statute that its title is vague or unmeaning as to its purpose, if it be sufficiently distinct as to the matter to which it refers.'

"The principal object of this constitutional provision is to advise the Legislature and the people of the nature of each particular bill, so as to prevent the insertion of obnoxious clauses, which otherwise might be ingrafted thereupon and become the law, and also to prevent combinations, whereby would be concentrated the votes of the friends of different measures, none of which could pass singly; thus causing each bill to stand on its own merits. Cooley's Const. Lim. (4th Ed.) 173; Giddings v. San Antonio, 47 Tex. 555 [26 Am. Rep. 321]; Al-

brecht v. State, 8 Tex. App. 216 [34 Am. Rep. 737]."

The view so expressed was approved by our Court of Criminal Appeals in Ex parte Hernan, 45 Tex. Cr. R. 343, 77 S. W. 225; and in the case of Stone v. Brown, supra, the court cites numerous authorities tending to show the liberality with which the section of the Constitution under consideration is to be construed.

[7] Applying the rules of construction so indicated, we feel unable to say that the act under consideration is, as contended, unconstitutional and of no effect. As indicated by its title, the object of the Legislature in the enactment was to define what shall constitute actionable fraud in this state, and also prescribe a rule for damages to be recovered against persons committing fraud as defined in the act. We think the provisions of the act all relate to the same general subject, and are reasonably adapted to the accomplishment of its purposes.

It has been decided that the Legislature has the power to enact even arbitrary laws not in conflict with our own Constitution or that of the United States. City of Austin v. City Cemetery Association, 87 Tex. 330, 28 S. W. 528, 47 Am. St. Rep. 114; State v. McAlister, 88 Tex. 284, 31 S. W. 187, 28 L. R. A. 523; Brown v. City of Galveston, 97 Tex. 1, 75 S. W. 488. And that a party attacking a legislative act as unconstitutional must be able to point out the particular provision of the Constitution forbidding its enactment. Railway Co. v. Harry & Bros., 63 Tex. 256; Parks v. West, 102 Tex. 11, 111 S. W. 726. As illustrations, we note that it has been held that the Legislature may declare who are and who are not fellow servants. Campbell v. Cook, 86 Tex. 630, 26 S. W. 486, 40 Am. St. Rep. 878; Railway Co. v. Hannig (Tex. Civ. App.) 41 S. W. 197. That payment of United States tax was prima facie evidence of engaging in selling liquor was valid. Texas v. Matkin (Tex. Civ. App.) 142 S. W. 604. As also the law changing common-law rules relating to contributory negligence and assumed risk. So too, it may by general law, such as that under consideration, change a rule of evidence. See Johnson v. Taylor, 60 Tex. 360; Day Co. v. State, 68 Tex. 526, 4 S. W. 865. We accordingly overrule appellees' contention that the act is unconstitutional and void. It follows from what we have said that we think the court undoubtedly erred, as appellants urge, in denying them all relief.

In view of the reversal of the cause, as we think must be done, we will notice several other questions presented.

[8] By reference to the issues submitted and the answers of the jury above given, it will be noted that in answer to special issue No. 4 the jury found that the defendants acted in good faith at the time of making the representations. Apparently, at least, this finding was made the basis of the court's decree in favor of the defendants, but in no view of the case can it be properly said that if the defendants, in fact, made misrepresentations of material facts, as the jury evidently found, mere good faith on the part of the defendants would entirely exculpate them; for its is undoubtedly true where a seller makes positive affirmation of material facts relative to the subject-matter of the sale to one without knowledge, and who trusts and relies upon such misrepresentations, he cannot be excused from the consequences on the mere ground that the false representations were made in good faith. Mitchell v. Zimmerman, 4 Tex. 75, 51 Am. Dec. 717; Cabaness v. Holland, 19 Tex. Civ. App. 383, 47 S. W. 379; Pendarvis v. Gray, 41 Tex. 326; Loper v. Robinson, 54 Tex. 510; Culbertson v. Blanchard, 79 Tex. 486, 15 S. W. 700.

[9] Appellants, however, assign error to the submission of this issue, insisting that it was wholly irrelevant, but in this contention we cannot concur, for the reason that plaintiffs, among other things, sought to recover not only actual, but also exemplary, damages, and, by reference to section 3 of the act of the Legislature quoted, it will be noted that to render the defendants liable for exemplary damages the false representations and promises must have been knowingly and willfully made. The issue, therefore, was pertinent and relevant to the plaintiffs' claim for exemplary damages, and, as such, properly submitted.

[10] Appellants also assign error to the court's refusal to submit several special issues requested by them. We have examined these issues and find no error in the refusal, except we are of the opinion that the court erred in rejecting special issue No. 4, which was:

"Did the defendants comply with their promises to plaintiff B. P. Roark, as to payments of interest and dividends, within a reasonable time after the purchase of stock in defendant Motor Supply Company?"

There was evidence tending to show that the defendants' promise of future interest and dividend payments had not been complied with, except as to the single instance already noted, and we think the issue was relevant and pertinent, in view of the language of section 1 of the act, defining what shall constitute actionable fraud. This section of the act constitutes a false promise to do some act in the future which is made as a material inducement to another to enter into a contract, and but for which promise said party would not have entered therein, actionable, and unless excused by the party making such promises as provided in the act they are presumptively fraudulent. We think the plaintiffs were entitled to have the issue submitted, under their alternative plea of re-

scission of the contract and recovery of the purchase money.

[11] There is a contention in behalf of appellees to the effect that the plaintiffs were not entitled to recover under the act of the Legislature under consideration to both damages and to a rescission of the contract and to a recovery of the purchase money; their insistence being that the plaintiffs were required to elect upon which cause of action they would proceed, and, having declared upon an action for damages, they are precluded from a recovery under the theory of a rescission of the contract. It may be true and is true, we think, that plaintiffs would not be entitled to pursue to an ultimate conclusion both remedies; in other words, the remedies are inconsistent. The action for damages proceeds upon the theory that the contract of purchase will be affirmed and plaintiffs be entitled to damages, while the action for rescission proceeds upon the theory that the contract shall be rescinded and the plaintiffs merely restored to their former condition by recovery of the purchase money. There was, however, in this case no election upon the part of plaintiffs; no election was demanded of them, if, indeed, plaintiffs could be properly compelled to elect. We think the plaintiffs were entitled under their pleadings to have all materials facts relating to both remedies submitted to and determined by the jury, and upon the findings plaintiffs could then elect and press for judgment upon the theory of damages or rescission, as they should conclude was best supported by the pleadings and findings.

We find nothing further that we deem important to notice, but conclude, for the reasons stated, that the judgment must be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.