THE CITY OF ST. PAUL, Plaintiff in Error, vs. DOMINIC TROYER, Defendant in Error.

The Common Council of the City of St. Paul are authorized by charter to pass ordinances regulating the sale of spirituous, vinous and fermented liquors, &c. They passed an ordinance providing, "That no person or persons shall sell, vend or dispose of, traffic or deal in, or give away such liquors, in or at any place or house within the limits of said city, without first obtaining a license," &c., &c. *Held*—that the ordinance was intended to be confined in its operations to dealers who vend their liquors at a particular place, and does not include those manufacturers who sell at first hand in large quantities to small dealers, and deliver to them at their places of business.

The Defendant below was prosecuted in the Police Court for an alleged violation of an ordinance of said city. The Defendant was convicted by the City Justice, and the record, &c., removed to the District Court, Ramsey County, on appeal. The District Court acquitted the Defendant.

The whole case, (except the final decision of the District Court,) is presented in the agreed statement of facts, to wit:

This case comes by way of appeal from the judgment of Orlando Simons, Esq., City Justice of said City of St. Paul. The parties, Plaintiff and Defendant, state the following as the agreed facts in said case, and as embracing the whole of the testimony therein :

The Defendant is presented for an alleged violation of an ordinance of said city, adopted and passed on the 29th day of June, 1858, and duly approved and published before the commission of the alleged offence, entitled "An ordinance regulating and licensing the sale of spirituous liquors, and the keeping of billiard tables and ten-pin or bowling alleys and saloons," numbered one, which ordinance is made part hereof.

It is further agreed that the Defendant is a brewer, having and carrying on within said city his brewery, then being and having been for a long time prior to the commencement of said prosecution, engaged in the manufacture of beer; that the said Defendant has been and is engaged in selling beer by the cask or barrel at wholesale to his customers residing within said city; and that on the 21st of September, 1859, said Defendant delivered to one Nicholas Potgeiser, a licensed retail dealer in beer and spirituous liquors, a keg of lager beer, being fermented liquor by Defendant manufactured, and sold to said Potgeiser by said Defendant by the keg, and not by retail or in other quantities less than a keg or barrel— said keg being the ordinary sized beer barrel, containing fifteen gallons of beer; which said sale and delivery so made to said Potgeiser on the day aforesaid is the alleged offence with which said Defendant is charged in said prosecution, and none other. It is further admitted and stated that the Defendant has not had or obtained a license of the city aforesaid or under its ordinance or authority, to sell his own manufactured beer in the barrel, by the keg or retail.

Said ordinance provides :

Sec. 1. That no person or persons shall vend, dispose of, traffic or deal in, or give away, any spirituous, vinous, fermented or intoxicating liquors *in* or *at* any *place* or *house*

within the limits of the city of St. Paul, without having first obtained a license for that purpose from the Common Council; * * and provides a penalty for a violation, of not less than $10 or more than $100.

The following are the points and authorities relied upon by the Counsel for the Plaintiff in Error:

The Court below erred in rendering judgment against the City of St. Paul.

*First.*—Because the facts agreed on showed that the case was within the ordinance referred to.

*Second.*—Because it appeared that said ordinance was authorized by the charter of said City.

*Third.*—Because the branch of business in which the Defendant was engaged was a legitimate subject of regulation, and that the ordinance was a reasonable regulation of such branch of business.

The following are the points and authorities relied upon by the Counsel for the Defendant in Error:

*First.*—The charter of the City of St. Paul does not, (and could not if such provisions were contained therein,) authorise the passage of the ordinance under which Defendant is prosecuted.

*Second.*—The charter only gives, and the Legislature can only confer, authority to the municipal corporation to make *police* and *sanatory regulations;* and such regulations must be subordinate to the constitutional rights of the citizen, and not inconsistent with the statute and common law of the land. That the ordinance in question is subversive of these rights and inconsistent with the laws of the State.

*Third.*—If the right to license the manufacturer of fermented liquors and to prohibit him selling without a license exists, no ordinance has yet been passed to that effect; and that Defendant, as shown by the agreed facts, is not within said ordinance.

HENRY J. HORN, Counsel for Plaintiff in Error.

SMITH & GILMAN, Counsel for Defendant in Error.

*By the Court.*—FLANDRAU, J.   The Charter of the City of St. Paul authorizes the Common Council of that City, by ordinances, resolutions or by-laws, among other things, to " grant licenses and regulate   *   *   *   groceries, taverns, victualling houses, and all persons vending or dealing in spirituous, vinous or fermented liquors; *provided*, that the license for so dealing in or vending spirituous or fermented liquors, shall not be less than fifty dollars a year; that no license shall be granted for a less term than one year, and all licenses shall commence and terminate on the second Tuesday of May in each year. "

Under and by virtue of this provision of the Charter, the Common Council passed an ordinance which provides " that no person or persons shall sell, vend, dispose of, traffic or deal in, or give away, any spirituous, vinous, fermented or intoxicating liquors in, or at any place or house within the limits of the City, of St. Paul, without first having obtained a license for that purpose from the Common Council of asid City, " and provides a penalty of from ten to one hundred dollars for a violation of its provisions.   By Sec. 2, of said ordinance, the manner of obtaining such license is pointed out as follows:

" Any suitable person who shall be approved by the Common Council, upon paying to the City Treasurer not less than fifty dollars, and filing with the City Clerk the Treasurer's receipt and the bond hereafter mentioned, (in every case where such bond is required,) shall be entitled to, and on demand shall receive, a written license issued by said Clerk, and signed by the President of the Common Council, to sell, vend, deal in and dispose of, any spirituous, vinous, fermented or intoxicating liquor at any one certain place, house or room, within said City, to be designated in said license, for the period of one year after the second Tuesday in May in each year, &c. "   There are further provisions concerning the bond and security, and then follows a prohibition against a transfer of the license, or a change of the place for selling, &c., without the consent of the Common Council.

The Defendant is a brewer, and manufactures beer within the limits of the City of St. Paul, and supplies his customers

by the cask and keg, at their several places of business. The offence for which he was convicted, was selling and delivering to a licensed retail dealer in St. Paul, a fifteen gallon keg of beer at the place of business of the latter. On an appeal from a conviction before the City magistrate, he was acquitted by the District Court. The City now brings error.

The Defendant waives the question of the right of the City to prosecute the writ against him after an acquittal, as an interpretation of the ordinance by this Court is desired.

The Legislature has the right to confer upon a city, the power of regulating any business which may act prejudicially upon the health, morals, or peace of the inhabitants. This regulation may be extended to the exercise of a discretionary power by the city authorities as to the person who is to prosecute, and the place where the business is to be transacted; and a reasonable tax may be imposed for the privilege of embarking in, and carrying on, any such business. The right to regulate such matters, is found in the first principles of good government, and self-protection. The right to impose a tax upon a licensed business, is largely supported by legislative and judicial sanction and recognition. That a very large discretion must be vested in the officers who are to grant or refuse the licenses in such cases, is manifest from the nature of the subject to be regulated. They must of necessity be the best, and generally the only judges whether the establishment of a slaughter house, or a tippling shop in any particular locality, will affect injuriously the health of the neighborhood, or disturb the peace of the community, as each particular case must depend in a great measure upon its own circumstances and bearings. The power to regulate and license necessarily involves the power to refuse to license, when in the judgment of the excise board there are features connected with any particular application which would render a compliance unsafe or improper. Unless this power to refuse is admitted, there could be no regulation, because if the authorities were obliged to license every applicant who had complied with a prescribed set of conditions, or who would pay a certain sum of money, the power would be changed from one of regulation, into

simply one of taxation; from a power, the judicious exercise of which is essential to the very life of a city, into one entirely at the mercy of the individual citizen, and of no possible advantage to the City, save in the paltry sums it might put into the treasury. When we speak of a discretion in the city authorities, in the exercise of a power, we mean, of course, a legal discretion, and not an arbitrary and uncontrolable sway. From the peculiarly democratic character of our municipal institutions, such powers cannot become dangerous in the hands of our rulers, except, perhaps, in the granting of such licenses with too much liberality. We have never heard any complaints concerning the scarcity of such institutions. We see no excess of legislative power in the grant to the City which has been quoted from the Charter, nor on the part of the Common Council in passing the ordinance under it.

It is, however, quite evident that the ordinance which was passed by the common council, was intended to be confined in its operation to dealers who vend their liquors at a particular place, because its prohibition is aimed against the vending of liquors "*in or at any place or house*," without a license; which view is made more clear by the succeeding section, which, in providing the means of obtaining licenses, confines their issue to persons selling at "*one certain place, house or room to be designated in said license*," and prohibits any change of such place without the consent of the common council. We cannot think that the common council designed to include in the general prohibition those manufacturers who sell at first hand, in large quantities to small dealers, and deliver to them at their places of business, and then fail to provide any means for their being licensed. This would be prohibition, and not regulation. But we feel no difficulty in declaring that the Defendant does not fall within the ordinance at all.

The judgment is affirmed.