## EX PARTE A. ABRAMS.

### No. 4086.   Decided November 11, 1908.

Rehearing Denied June 9, 1909.

**1.—Sale of Intoxicating Liquors—City Charter and Ordinance—Caption of Act —Constitutional Law.**

The Act of the Thirtieth Legislature of 1907, granting a special charter to the city of Texarkana is not unconstitutional on the ground that it embraces more than one subject, etc., and is valid under section 35, article 3, of the State Constitution.   Following Joliff v. State, 53 Texas Crim. Rep., 61, and other cases.

**2.—Same—Corporation Court—City Court—State Penal Laws.**

The Act of the Thirtieth Legislature of 1907, granting a special charter to the city of Texarkana, and creating a court with jurisdiction to try offenses against the laws of the State is valid, without regard to the Act of the Twenty-sixth Legislature establishing general corporation courts.   Following Harris County v. Stewart, 91 Texas, 133, and other cases.   Overruling Leach v. State, 36 Texas Crim. Rep., 248.

**3.—Same—Number of Saloons—Discrimination—Constitutional Law.**

The Act of the Thirtieth Legislature granting a special charter to the city of Texarkana, and limiting the number of saloons to two in any half block of said city is valid, and not in conflict with article 16, section 20, of the State Constitution.   Following Garonzik v. State, 50 Texas Crim. Rep., 533, and other cases.

**4.—Same—Intoxicating Liquors—License—Discrimination.**

The granting of license to sell intoxicating liquors in incorporated cities is not a matter of right, but rests in the sound discretion of the tribunal to which such grant is committed; and where the Legislature has in terms fixed a mandatory inhibition against more than two saloons existing in any half block by virtue of a special charter, and invested said city with power to discriminate as to the persons who shall conduct said saloons, such regulation is valid, and can be carried out by the city.

**5.—Same—Levy of Taxes—City Ordinance—State Tax.**

Where upon trial of the illegal sale of intoxicating liquors without license, in the corporate limits of a city under special charter, it was shown that said city had passed a general ordinance providing for the levy of an occupation tax equal to one-half of the State tax on liquor dealers, before the passage of the Baskin-McGregor Law regulating such tax; and said special charter provided that all existing ordinances in effect at the date of the passage of said charter should continue in force, said former city tax law applies to and is valid under the new tax provided for by the said special charter, and no additional ordinance is necessary.

**6.—Same—Discrimination.**

Upon trial for unlawfully pursuing the occupation of selling intoxicating liquors without license within the corporate limits of a city under special charter, empowering said city to authorize only two saloons in any half block, etc., it was no defense that the city authorities had issued three retail liquor dealer's licenses in a certain half block of said city.

**7.—Same—Cases Stated—Selling Intoxicating Liquors Without License.**

Where upon trial of unlawfully pursuing the occupation of a retail liquor dealer without license in the corporate limits of a city under special charter, the evidence showed that relator had duly taken out State and county license and tendered to the collector of said city one-half of the tax as fixed by the State law, and further showed that he had been denied a license by the city

Vol. 56 Crim.—30.

authorities by virtue of the charter and city ordinance, which provided that the city could limit the number of saloons to two in every half block at any one time, according to their discretion, the relator is not authorized to pursue such occupation, and can be tried in the corporation court of said city as fixed by said special charter. Davidson, Presiding Judge, dissenting.

From Bowie County.

Original proceedings in habeas corpus asking release from arrest under a warrant issued by the corporation court of the city of Texarkana charging relator with unlawfully pursuing the occupation of a retail liquor dealer in said city.

The opinion states the case.

*Terrell, Robinson & French,* for relator.—On question of caption of act, which was as follows: An act to incorporate the city of Texarkana, Texas, as a city of the first class, as a city of ten thousand and over of inhabitants; to grant to the said city a special charter; to repeal all laws in conflict herewith; and declaring an emergency. Stone v. Brown, 54 Texas, 330; Adams et al. v. San Angelo Water Works Co. et al., 86 Texas, 485, 25 S. W. Rep., 605; Morrill v. Smith, 89 Texas, 529.

On question of limiting number of saloons counsel quoted same authorities, and also the following: Art. 16, sec. 20, Constitution of Texas; Adams v. San Angelo Water Works, 25 S. W. Rep., 605; Sec. 3, art. 1, Constitution of Texas; Ex parte Brown, 38 Texas Crim. Rep., 295, 42 S. W. Rep., 554; Vol. 10, Enc. of Law, pp. 367-363-365-270; Simrall et al. v. City of Covington, 14 S. W. Rep., 369; Bennett v. Mayor of Town of Pulaski, 52 S. W. Rep., 913; Second Abbott Munic. Corporation, sec. 805, pp. 1906-989-1344; 29 Maryland, 516; Ex parte Patterson, 42 Texas Crim. Rep., 256, 58 S. W. Rep., 1011; Dillon Munic. Corporation, Vol. 1, p. 213; Zanone v. Mound City, 103 Ill., 552.

On question of discrimination: Ex parte McKenna, 126 Cal., 429; In re Lowe, 54 Kans., 757; Foster v. Police Commissioner, 102 Cal., 483; Tugman v. City of Chicago, 78 Ills., 405; City of Des Moines v. Keller, 116 Iowa, 648.

*F. J. McCord,* Assistant Attorney-General, for the State, and *F. M. Ball,* City Attorney, for respondent.—Cases cited in the opinion.

RAMSEY, JUDGE.—This is an original proceeding in the nature of habeas corpus begun and filed in this court. It is alleged in substance that the relator is illegally restrained of his liberty by one James Hughes, chief of police of Texarkana, Texas, under a warrant issued on a complaint filed in the corporation court of said city charging the sale of spirituous liquors without first having obtained a license so to do. The evidence shows that relator had duly taken all the precedent steps required by law to engage in the business, had

paid his State and county tax and had tendered to the collector of taxes of Texarkana one half of the tax on said business as fixed by the State law. He was refused a license by the city, under the terms of the special charter granted in 1907, which in terms denies to the city authority to "ever issue at any one time more than two licenses for saloons or retail liquor dealers in any one half block."

1. The discharge of relator is sought on several grounds which we will now consider: 1. It is claimed that that portion of the Act of the Thirtieth Legislature granting to the city of Texarkana a special charter and as an incident thereto creating a court with jurisdiction to try offenses against the laws of the State is void for the following reasons: (1) Because it attempts to embody more than one subject in the same act. (2) Because the Legislature has no authority to create a city court to try offenses against the laws of the State. (3) Because the creation of a State court is not expressed in the caption of the act. The respondent substantially takes issue with relator on all the propositions above stated and further contends that the portion of the act relating to, and the recitals of such act in respect to the creation and organization of a corporation court may and should be treated as surplusage for that the Act of the Twenty-sixth Legislature creating and establishing in each of the cities, towns and villages of this State, a *State Court* to be known as the corporation court in such city, town or village, prescribing the jurisdiction and organization thereof, and abolishing municipal courts, is the creator of said court issuing the process herein, and the law by virtue of which said court exists, wholly independent of any of the provisions of the Texarkana Charter Act.

Section 35 of article 3 of our Constitution provides that "no bill (except general appropriation bills, which may embrace the various subjects and accounts for and on account of which moneys are appropriated) shall contain more than one subject, which shall be expressed in its title." It has been uniformly held that a liberal construction will be applied in determining whether or not a statute violates this section. Breen v. Texas & P. Railway Co., 44 Texas, 302. The question was before this court in Joliff v. State, 53 Texas Crim. Rep., 61, 109 S. W. Rep., 176, and was carefully considered. We there held that an act is not unconstitutional because more than one object is contained therein where the objects are germane to the main subject, or they relate directly or indirectly to the main subject, and have a mutual connection with and are not foreign to the subject of such act, or when the provisions of the act are of the same nature and come legitimately under one subject. Fahey v. State, 27 Texas Crim. App., 146. The true intent of this provision of our Constitution is that the general ultimate object and subject shall be stated in the title and not the details by which this object shall be accomplished. Any related provision seeking to carry out or aid the dominant and declared object of any given act is not subject to

the objection here urged, although same may not be specifically indicated in the title. Smith v. Grayson County, 18 Texas Civ. App., 153; Snyder v. Compton, 87 Texas, 374; Cooley Const. Lim., 170.

2. The question of the authority of corporation courts in cities to try offenses against the State law has been frequently before this court, and has been the subject of radical difference among the judges composing the court, and has resulted in much confusion in the decisions of this tribunal. In the case of Leach v. State, 36 Texas Crim. Rep., 248, 36 S. W. Rep., 471, it was held that under our Constitution, art. 5, sec. 1, declaring that the "judicial power of this State shall be vested in certain named courts and in such others as may be provided by law," the Legislature can not give a municipal court created as an incident to a municipal corporation, jurisdiction, concurrent with a State court over violations of State laws. Our Supreme Court, however, in an elaborate opinion by Judge Brown in the case of Harris County v. Stewart, 91 Texas, 133, ruled otherwise. It is in that case in terms held that, "The Legislature has power, under the Constitution, to confer upon a city recorder, the jurisdiction of a justice of the peace over offenses committed against the laws of the State; and the court refers as authority for this holding to the following authorities: Constitution, art. 5, Amendment 1891; Code of Criminal Procedure, arts. 98, 929; Ex parte Ginnochio, 30 Texas Crim. App., 584; Ex parte Towles, 48 Texas, 413; Gibson v. Templeton, 62 Texas, 565; Blessing v. City of Galveston, 42 Texas, 641; Johnson v. Hanscom, 90 Texas, 321; State v. Helefrid, 2 Nott & McCord, 233; Nugent v. State, 18 Ala., 521; Waldo v. Wallace, 12 Ind., 569; Gulick v. New, 14 Ind., 93; Gray v. State, 2 Harr (Del.), 76; Burch v. Hardwicke, 30 Gratt. (Va.), 24; Hutchins v. Scott, 4 Halsted (N. J.), 218.

In the later case of Ex parte Wilbarger, 41 Texas Crim. Rep., 514, the rule theretofore announced in Ex parte Leach seems practically to have been overruled. It was in Ex parte Wilbarger in effect held that under the amendment of 1891 expressly providing that, "The Legislature may establish such other courts as it may deem necessary and prescribe the jurisdiction and organization thereof and and may conform the jurisdiction of the district and other inferior courts thereto," the Legislature had complete authority to create other courts than those enumerated in the Constitution, and prescribe their jurisdiction. The conclusion reached in that case and the rule therein established has since been the settled holding of this court. Ex parte Hart, 41 Texas Crim. Rep., 581. While, as will be noticed, by an examination of the two last named cases there is not entire harmony in the reasoning in the opinions, the conclusion reached by the majority of the court is substantially the same. My own view is that under the amendment to our Constitution adopted in 1891 in terms authorizing the Legislature to "establish such other courts as it may deem necessary," our Legislature is given plenary

power to establish such courts as the public needs in their judgment require, and that whether they shall or may be called or determined to be State courts or corporation courts can make no difference, and that within the limits of their granted authority they may try offenses against State or municipal law or both. This is, as we believe, in accordance with the decision in Harris County v. Stewart, supra, the reasoning of which case to our minds is unanswerable. We, therefore, hold the court issuing the warrant in this case under which relator is held exists legally and had authority to issue such warrant. We have in reaching this conclusion not found it necessary to consider whether such court might not be upheld under the provisions of the Acts of the Twenty-sixth Legislature.

3. It is next contended that the Act of the Legislature granting the city of Texarkana a charter and limiting the number of saloons or retail liquor dealers' business to not more than two in any half block of said city, is void for the following reasons: (1) Because the subject of the number of retail liquor dealers' establishments to be conducted in a city is a distinct object and is not expressed in the caption or title of said act. (2) The Legislature can not by special act incorporate a city and in the same act limit the number of retail liquor dealers' establishment, to be conducted in any one half block of the city so incorporated, because the Constitution prohibits bills containing more than one subject. (3) Because said act discriminates between citizens of the same class. (4) Because said act denies to one citizen a public privilege which it grants to another of the same class. (5) Because said act is in conflict with article 16, section 20, of the Constitution of the State in that it prohibits the sale of intoxicating liquor without first submitting the question to a vote of the people. The views heretofore expressed, if correct, are decisive against the relator as to the matter of the supposed unconstitutionality of the act in question because of the alleged violation of the Constitution in respect to the inclusion of more than one subject in the act in question, and need not be further discussed. We think there can be no doubt that the Legislature may in the same act incorporate a city and create and provide for a court to try offenses therein committed, and thereby guard and protect its people, and in so doing not violate the constitutional inhibition against bills containing more than one subject. The creation and provision for such court is so intimately connected with, and subsidiary to the main subject of legislation, and the object sought to be accomplished as to be fairly included within the same general subject. Joliff v. State, 53 Texas Crim. Rep., 61, 109 S. W. Rep., 176; Albricht v. State, 8 Texas Crim. App., 216; Floeck v. State, 34 Texas Crim. Rep., 314; Johnson v. Martin-Wise Co., 75 Texas, 33. Nor do we believe that the portion of the charter in question limiting the number of saloons to be conducted in any one half block is unconstitutional in that it is in conflict with article 16, section 20, of our

Constitution in that it prohibits the sale of intoxicating liquors without first submitting the question to a vote of the people. We held in the case of Williams v. State, 52 Texas Crim. Rep., 371, 107 S. W. Rep., 1121, that this article of the Constitution does not prohibit the establishment of saloon limits within the city of Dallas. The establishment of such saloon limits was held in no sense to be a prohibition law, but was a bona fide regulation of the sale of whisky. Mr. Justice Bookhout, in Cohen v. Rice, 101 S. W., 1052, in considering a similar question, said, "The ordinance does not prohibit the sale of intoxicating liquors in the city of Marshall, but regulates the sale of the same in the city by confining the sale to the business portion of the city." It was said in the case of Garonzik v. State, 50 Texas Crim. Rep., 533, 100 S. W., 374, that the designation of locality where the sale of intoxicating liquors is inhibited, is not prohibition, but a mere regulation of the sale." Such also was the holding, in substance, of this court in Ex parte Levine, 46 Texas Crim. Rep., 364. If, therefore, the exclusion of saloons from large parts of a municipality at all can be sustained as a mere regulation of the liquor traffic, it would seem to follow of necessity, by analogy, that for the public good the number of saloons to be operated in any given territory might also be controlled.

4. Among the provisions contained in the special charter of Texarkana is the following: "Saloons: Power to close drinking saloons, dram shops and other public places where intoxicating liquors are sold or given away, and to close any theater or variety show when necessary or expedient; to make and enforce all needful regulations for saloons, dram shops and other public places where intoxicating liquors are sold or given away." It is also provided in connection with this same subject, as follows: "Provided, however, that at any one time not more than two saloons or retail liquor dealers' shall ever be licensed or permitted to conduct a business in any one half block, and by half block as herein used, shall be held to mean that portion of a block between an alley and a street, and provided, further, that when two licenses shall have been issued to a saloon or retail liquor dealer in any one half block, that no other saloon license or retail liquor dealers' license for any one such half block shall thereafter issue for the period of time or any part of the period of time thereby covered by such two licenses issued; and provided, further, that in the event there should be at any one time more than two applications to the city collector for the issuance of saloon or retail liquor dealers' license for any particular half block, as herein defined, it shall be the duty of the tax collector aforesaid to refer all such applications to the city council of such city, which shall immediately determine which two said applications shall be accepted, which shall be determined upon question or point of priority of making said applications, and for any other good and sufficient reason, and the action of said city council shall be final, and provided

the city council may refuse to issue license to a nonresident of the State." It can not, we think, be doubted that if these provisions are valid, that relator must be remanded. We think it well within the power of the Legislature to impose such reasonable regulations on the conducting and licensing of saloons as in their judgment the public good and the general welfare of the community required. This is not, as we believe, to prohibit the sale of intoxicating liquors in such city, but for the general good to regulate such sale by placing reasonable and no doubt needed regulations as to the conditions and limitations under which it should be sold.

It seems to be the doctrine everywhere that the granting of license is not a matter of right, but rests in the sound discretion of the tribunal to which such grant is committed. The rule is thus stated in that invaluable work, 23 Cyclopedia of Law and Procedure, p. 135: "A few decisions hold that if a person who desires a liquor license brings himself within the terms of the law, by complying with all the statutory preliminaries and possessing the requisite moral and other qualifications, he is entitled, as a matter of law, to be licensed, and the license can not be withheld from him. But in most jurisdictions the doctrine is now well settled that the court or board charged with the duty of issuing licenses is invested with a sound judicial discretion, to be exercised in view of all the facts and circumstances of each particular case, as to granting or refusing the license applied for." Again, it is said: "But it is no abuse of discretion to refuse a license on the ground that the *place* where it is proposed to open the saloon or bar is not suitable for that purpose, or that it has become a place of bad repute and a resort for disorderly persons, or where, as between petitioners and remonstrants, there is an overwhelming majority against the grant of the license." The author also in respect to the matter of control or review of the exercise of discretion of such board, says: "Insofar as the decision of the licensing authority or board, upon the grant or refusal of a particular application, is governed by the exercise of that legal discretion with which the law invests them, it is not subject to be controlled or reviewed by the courts, and will not be interfered with except where arbitrary action on their part, or a plain abuse of discretion, is made to appear. Mr. Black, section 171, in treating the same subject, says: "The discretion to be exercised in granting or refusing licenses is a sound judicial discretion, to be determined, in its exercise, by the facts and circumstances of each case. It is not the arbitrary will of the judge; it must rest on reasons. It would be improper to grant a license to any applicant without investigating his qualifications. And it would be equally improper to refuse a license to any applicant from mere prejudice or caprice, or without any reason whatever. The limits of the discretion are marked out by the law, and to exceed them, on one side or the other, is an abuse of power. The true doctrine on this point is stated by the Supreme Court of

Pennsylvania, in saying that the discretion is a sound legal discretion, resting on the circumstances of each case, and not on a general opinion as to the propriety or impropriety of granting licenses." A similar conclusion was reached in the well considered case of State v. Common Council of Northfield, 101 N. W. Rep., 1063, where the Supreme Court of Minnesota used the following language: "As remarked by Judge Flandrau, in St. Paul v. Troyer, 3 Minn., 291, a case involving the construction of charter provisions and an ordinance similar to those in the case at bar, unless the power to refuse is thus conferred, there would be no control or regulation, because, if the authorities were required to license every applicant who complied with a prescribed set of conditions, the authority would be changed from one of regulation and control to one of taxation—from a power, the judicious exercise of which is essential to the very life of a city, into one entirely at the mercy of the individual citizen. When we speak of a discretion in the city authorities in the exercise of a power, we mean, of course, a legal discretion, and not an arbitrary or uncontrollable sway. From the peculiar democratic character of our municipal institutions, such powers can not become dangerous in the hands of our rulers, except, perhaps, in the granting of such licenses with too much liberality." This is the rule where a general discretion has been conferred on a board having authority to regulate the issuance of licenses for dram shops. It certainly is much more true in a case where, in the very life of the municipality, as found in the special charter, the Legislature has in terms fixed a mandatory inhibition against more than two saloons existing in any half block. As will be noted from the article of the charter quoted above, it is provided that in the event more than two persons make application for license, that such applications shall be by the tax collector referred to the city council, who shall determine the matter and grant the license, basing their conclusion on priority of filing or other good reasons; and it is also provided that the judgment and conclusion of the city council shall be final. It appears in this case that the application of relator was second in point of time of filing, but the city council was given full and exclusive control of this matter, and the charter in question provides that their conclusion on such matter shall be final. It may be injustice was done relator in the determination of the city council. We do not know and we can not say, but that body is made the arbiter in such matter, and the law declares and provides that their action ends and settles the question and should have that effect, at least under conditions as herein presented.

5. It is contended again that the arrest is illegal, for that subsequent to the passage of what is known as the Baskin-McGregor law regulating the sale of liquors at retail and fixing a tax therefor, that no action was taken by the city council of the city of Texarkana in terms fixing and naming and levying a tax on such business. The

Baskin-McGregor law in effect provides that counties and cities may levy a tax equal to one half the State tax. Sometime before the passage of this act the city of Texarkana, then organized under the general law, had passed a general ordinance providing for the levy of an occupation tax equal to one half of the State tax on liquor dealers. In the charter under consideration, it was in terms provided that all existing ordinances in effect at the date of the passage of said charter should be and were continued in force. We think this had the effect to apply the old ordinances automatically to the new tax as levied by the special charter, and to entitle the city to the levy and collection of one half of the tax on such business due the State as fixed by the Baskin-McGregor law.

6. It is again urged that the action of the city council discriminates against relator by refusing to issue to him a license when the evidence shows that they had issued three retail liquor dealers' licenses in the south half of the same block. That the council was wholly inconsistent in view of this action is evident, but we think an application of the trite and homely adage that "two wrongs can not make a right" is a sufficient answer to this contention. The fact that the city council have done wrong in one instance, would not authorize relator to enforce a demand not justified under the law.

In conclusion, we may say the case was well briefed and well argued on both sides. It is to be regretted that we have not access to many of the authorities cited, and, therefore, have not examined many of the cases cited both by counsel for relator and respondent. We have, however, carefully investigated such of them as we have been able to find, and the views we have expressed represent our best judgment in the case. We believe, finally, that the arrest was warranted by law; that the relator is held under a valid complaint and under a valid ordinance, and, therefore, he should be remanded for further proceedings and according to law.

*Relator remanded to custody.*

[Motion for rehearing overruled June 9, 1909.]

DAVIDSON, Presiding Judge (dissenting).—I most earnestly but respectfully dissent from the conclusion reached by my brethren. While I dissent upon several of the propositions enunciated and decided in the majority opinion, I will confine what I have to say to two questions, first, in sustaining the authority of the city court to entertain jurisdiction of violations of the State law, and, second, to the arbitrary and discriminating effect of the city charter. It is stated that the case of Ex parte Wilbarger, 41 Texas Crim. Rep., 514, practically overrules all that line of cases which held that the Legislature was without authority to grant jurisdiction to city courts to try State cases. I do not care to review the many questions that arose in the adjudicated cases of the Supreme Court and Court of Criminal Appeals in regard to this question. But I can not assent

to the proposition that the Wilbarger opinion overruled those cases. If Judge Brooks' individual views are to obtain, as stated in Ex parte Hart, then the position of the majority is correct. The writer dissented in that case and Judge Henderson did not concur with Judge Brooks's views except insofar as to agree that the corporation court act passed by the Legislature subsequent to the Coombs decision in 38 Texas Crim. Rep., 648, authorized the city to abolish the city courts and adopt the State corporation court. See opinion written by Judge Henderson in Ex parte Wilbarger, 41 Texas Crim. Rep., 514. In the later case of Ex parte Sibley, 65 S. W. Rep., 372, Judge Henderson expressly held that where the State court was a part and parcel of the charter, that it did not confer jurisdiction upon such court to try State cases. In the case in hand the city court is created in the charter, and it is not the "corporation court" provided for by the Legislature. As before stated, I do not care to review these decisions, as they have been so often reviewed they are familiar to the profession. I say this much to show that the Wilbarger case on this question has never been acquiesced in by either Judge Henderson or the writer. It would not be contended under these circumstances that a minority of the court could overrule decisions. Under our Constitution it takes a majority of the court to decide the law. Nor do I understand that the case of Harris County v. Stewart, 91 Texas, 133, is directly in conflict with this statement. That case is in line with Ex parte Fagg, 38 Texas Crim. Rep., 573, and indirectly the Supreme Court intimated that the city court might have jurisdiction of cases of which justices of the peace would have authority to try. This question was so decided in Ex parte Fagg, supra, and concurred in by the then Presiding Judge Hurt, who had dissented in the previous case of Leach v. State, 36 Texas Crim. Rep., 248, 36 S. W. Rep., 471, and Coombs v. State, 38 Texas Crim. Rep., 648. So then practically for the first time we have an adjudicated case by this court sustaining the view of Judge Brooks announced in Ex parte Hart, 41 Texas Crim. Rep., 581. The Wilbarger case, supra, is not authority for the decision in this case in regard to the authority of the city court. As before stated, the author of the Wilbarger case wrote the Ex parte Sibley decision. As I understand the rule in Texas, until the decision in this case, same has been contrary to the views entertained by a majority of this court now expressed. See Sibley, 65 S. W. Rep., 372. Chief Justice Roberts so held in Holmes v. State, 44 Texas, 631. See also Bigby v. State, 44 Texas, 351; Ex parte Ginnochio, 30 Texas Crim. App., 584; Ex parte Knox, 39 S. W. Rep., 670; Leach v. State, 36 Texas Crim. Rep., 248; Ex parte Fagg, 38 Texas Crim. App., 573; Ex parte Coombs, 38 Texas Crim. Rep., 648; Whitener v. Belknap, 89 Texas, 273; Turner v. Southern Pine Co., 16 Texas Civ. App., 545; Ex parte Wickson, 47 S. W. Rep., 643; Ballard v. City of Dallas, 44 S. W. Rep., 864; Holland v. State, 39 S. W. Rep.,

675; Ex parte Towles, 48 Texas, 413; Williamson v. Lane, 52 Texas, 335; Ex parte Whitlow, 59 Texas, 273; Gibson v. Templeton, 62 Texas, 555; State v. DeGress, 72 Texas, 242; Crowley v. Dallas, 44 S. W. Rep., 865; Titus v. Latimer, 5 Texas, 433. It would seem that these cases are sufficient in number to show the continuity and harmony of the decisions in Texas from Titus v. Latimer, in 5 Texas, 433, to date, and a careful or even casual reading of the cases of Ex parte Wilbarger, supra, and Ex parte Hart, supra, would demonstrate these latter cases did not and were not intended to overrule the long line of authorities and the unbroken jurisprudence in this State. Those two cases were deciding a different question under a different law.

I am not unaware of the fact that this dissenting opinion perhaps will amount to but little, yet under the circumstances I feel not only justified but obligated to express my views and respectfully but earnestly protest to the overruling of all these cases and the upturning and unsettling of the well settled law of the State. I have always understood that where the Constitution marks out a judicial system and enumerates courts, that legislative authority can not interfere with or change either the courts or their jurisdiction. It will be observed by turning to the provisions of the Constitution in the judiciary article, that it is there specifically stated, ordained and laid down that in Texas there shall be as many as four justices of the peace in a county and there may be as many as eight, and should the county contain a city or cities of over eight thousand inhabitants, that there may be two justices of the peace in said town or city. This is the limit fixed by express provision of the Constitution. If the people have a right to ordain a Constitution and fix the limitation of legislative authority, which I understand is the case, then the Constitution has limited the number of justices of the peace, and further that only these officers shall be justices of the peace. This question was expressly decided and it was the only question decided in the opinion by Chief Justice Roberts in the Holmes case, supra.

As to the second question, that is, as to the authority given city councils to arbitrarily discriminate between cities pursuing the same business, that provision reads as follows: "Saloons: Power to close drinking saloons, dram shops and other public places where intoxicating liquors are sold or given away, and to close any theater or variety show when necessary or expedient; to make and enforce all needful regulations for saloons, dram shops and other public places where intoxicating liquors are sold or given away." In this connection, this proviso is found: "Provided, however, that at any one time not more than two saloons or retail liquor dealers shall ever be licensed or permitted to conduct a business in any one half block, and by half block as herein used, shall be held to mean that portion of a block between an alley and a street, and provided, further, that when two licenses shall have been issued to a saloon or retail liquor

dealer in any one half block, that no other saloon license or retail liquor dealers' license for any one such half block shall thereafter issue for the period of time or any part of the period of time thereby covered by such two licenses issued; and provided, further, that in the event there should be at any one time more than two applications to the city collector for the issuance of saloon or retail liquor dealers' license for any particular half block, as herein defined, it shall be the duty of the tax collector aforesaid to refer all such applications to the city council of such city, which shall immediately determine which two said applications shall be accepted, which shall be determined upon question or point of priority of making said applications, and for any other good and sufficient reason, and the action of said city council shall be final, and provided the city council may refuse to issue license to a nonresident of the State." It will be difficult to imagine a more harsh, arbitrary and autocratic provision than that which authorizes the city council without hearing and without evidence and without notice to the interested parties to capriciously award license to one and reject license to another applicant. In the first place, these provisions are in conflict with the Baskin-McGregor law as I understand that law. It is conceded that the city has a right to fix saloon limits, but it is not conceded nor believed to be right or the law that within the saloon limits, a city council can arbitrarily choose who shall exercise the privilege of selling intoxicants within those saloon limits. When the applicant has complied with the State law, he has a right to sell under the privilege granted by the State within the saloon limits. If this is not a correct statement of the law, then the city council of Texarkana has the right to nullify the provisions of the State law and acts of the constituted and appointed authorities under the provisions of the State law. In other words, it makes the city charter paramount to the State law with power vested to suspend or repeal the operation of the State law, and this without giving any reason but arbitrarily and autocratically. Again, I am very firmly of the opinion that even the Legislature in its wildest stretch of omnipotence can not legally grant authority to a municipal corporation to set aside or suspend a State law. Section 28 of the Bill of Rights emphatically declares that no law shall be suspended except by the Legislature. That provision of the Bill of Rights, written prior to 1873, read as follows: "No law shall be suspended except by the Legislature or its authority." On account of the real or supposed autocratic and arbitrary action of the Legislature delegating power to the Governor of this State to set aside the laws under Governor Davis's administration, as soon as the Democracy of this State became enthroned in power under Governor Coke's administration, this section of the Bill of Rights was changed by direct vote of the people, amending it so as to eliminate the expression "or its authority." Hence, under the Constitution the Legislature only has power to suspend laws.

Ours is a government of law with the Constitution as its chief bulwark in which the general principles of the government are laid down and limitation placed upon power of the mentioned agencies of the government. This is emphasized in the further provision of the Bill of Rights which says, "All power is inherent in the people." This is a truism, and of course until this power has been delegated to some agency, it remains with the people. Nowhere in the Constitution has authority been delegated to any of its agencies of government to suspend or repeal laws except the Legislature itself as shown by section 28 of the Bill of Rights, supra. If this is correct, then the Legislature would have no authority to delegate any power to suspend laws. It has always been understood that where a privilege is granted a class, that all persons coming within the class are entitled to the exercise of that privilege by complying with the requisites of the law. This provision of the charter requires the city council in selecting the two applicants who may be authorized to follow the pursuit or exercise the privilege of selling intoxicants on a half block, to give priority to those who first apply. The evidence in this case shows that the applicant was the second to apply and that he had been doing business upon that half block for a long time. It is further shown in the evidence that there were no charges preferred against him, and that practically there were none to be preferred. It is further shown in the evidence that by a vote of the city council applicant was debarred the privilege of pursuing his occupation, that he was not given a hearing, and no evidence was introduced, but the whole matter was decided adversely to him without giving him the opportunity of being heard. While the selling of intoxicants is deemed a privilege to be granted by the dispensing power, yet when rules have been laid down by legislative authority, by which the privilege is to be obtained, then all parties who desire to follow that occupation or exercise that privilege within the terms of the statute are placed upon the same plane, otherwise the law is discriminating, arbitrary and autocratic. It will be noted that the terms of the act quoted requires the city council to give priority to first two applicants, but this is practically nullified by authorizing the city council to arbitrarily discriminate against such applicants without assigning a reason and to reject such applications without even regarding such priority claims. I can not imagine a more arbitrary and autocratic power in the exercise even of discrimination than this. This is not the worst provision or feature of this would-be law. Its consummation of injustice is found in the fact that this arbitrary power and autocratic discrimination is made a finality. I have always been taught in our form of government that autocracy is not to be tolerated, and that when a citizen of this State, when his life, liberty, property, immunities or privileges are involved, desires, he has the right to resort to the courts to test those matters. If this act is to be the law in Texas, the action of the city council in passing

upon the application of the right to exercise the privilege, is final, and the citizen is deprived of the right of resorting to the courts of the country to determine his rights, and this without even a reason or a cause being assigned by the city council for their arbitrary and autocratic action.      The authorities are so numerous to sustain the position of the writer that this can not be done, it is deemed unnecessary to collate them.      There is one case, however, which I desire to cite, to wit: Yick Wo v. Hopkins, 118 U. S. Rep., 356.      In that opinion this language is found with reference to certain ordinances passed by the city of San Francisco: "There is nothing in the ordinance which points to such a regulation of the business of keeping and conducting laundries.      They seem intended to confer, and actually do confer, not a discretion to be exercised upon a consideration of the circumstances of each case, but a naked and arbitrary power to give or withhold consent, not only as to places, but as to persons.      So that, if an applicant for such consent, being in every way a competent and qualified person, and having complied with every reasonable condition demanded by any public interest, should, failing to obtain the requisite consent of the supervisors to the prosecution of his business, apply for redress by the judicial process of mandamus to require the supervisors to consider and act upon his case, it would be a sufficient answer for them to say that the law had conferred upon them authority to withhold their consent, without reason and without responsibility.      The power given to them is not confided to their discretion in the legal sense of that term, but is granted to their mere will.      It is purely arbitrary, and acknowledges neither guidance nor restraint."      These ordinances were held violative of the Fourteenth Amendment of the Federal Constitution, and the court further uses this language: "It was said in the first case cited, 'undoubtedly intended not only that there should be no arbitrary deprivation of life or liberty, or arbitrary spoliation of property, but that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights; that all persons should be equally entitled to pursue their happiness and acquire and enjoy property; that they should have like access to the courts of the country for the protection of their persons and property, the prevention and redress of wrongs, and the enforcement of contracts; that no impediment should be interposed to the pursuits of anyone, except as applied to the same pursuits by others under like circumstances; that no greater burdens should be laid upon one than are laid upon others in the same calling and condition; and that in the administration of criminal justice no different or higher punishment should be imposed upon one than such as is prescribed to all for like offenses."      It was further said in the same opinion: "When we consider the nature and the theory of our institutions of government, the principles upon which they are supposed to rest, and review the history of their development, we are constrained to con-

Ex Parte A. Abrams.

clude that they do not mean to leave room for the play and action of purely personal and arbitrary power. Sovereignty itself is, of course, not subject to law, for it is the author and source of law; but in our system while sovereign powers are delegated to the agencies of government, sovereignty itself remains with the people, by whom and for whom all government exists and acts. And the law is the definition and limitation of power. It is, indeed, quite true that there must always be lodged somewhere, and in some person or body, the authority of final decision; and in many cases of mere administration the responsibility is purely political, no appeal lying except to the ultimate tribunal of the public judgment, exercised either in the pressure of opinion or by means of the suffrage. But the fundamental rights to life, liberty, and the pursuit of happiness, considered as individual possessions, are secured by those maxims of constitutional law which are the monuments showing the victorious progress of the race in securing to men the blessings of civilization under the reign of just and equal laws, so that, in the famous language of the Massachusetts Bill of Rights, the government of the Commonwealth 'may be a government of laws and not of men.' For, the very idea that one man may be compelled to hold his life, or the means of living, or any material right essential to the enjoyment of life, at the mere will of another, seems to be intolerable in any country where freedom prevails, as being the essence of slavery itself. There are many illustrations that might be given of this truth, which would make manifest that it was self-evident in the light of our system of jurisprudence. The case of the political franchise of voting is one. Though not regarded strictly as a natural right, but as a privilege merely conceded by society, according to its will, under certain conditions, nevertheless it is regarded as a fundamental political right, because preservative of all rights."

And as further said by that same august tribunal: "But it commits to the unrestrained will of a single public officer the power to notify every person who now employs a steam engine in the prosecution of any business in the city of Baltimore, to cease to do so, and by proving compulsory fines for every day's disobedience of such notice and order of removal renders his power over the use of steam in that city practically absolute, so that he may prohibit its use altogether. But if he should not choose to do this, but only to act in particular cases, there is nothing in the ordinance to guide or control his action. It lays down no rule by which its impartial execution can be secured or partiality and oppression prevented. It is clear that giving and enforcing these notices may, and quite likely will, bring ruin to the business of those against whom they are directed, while others from whom they are withheld, may be actually benefited by what is thus done to their neighbors; and, when we remember that this action or nonaction may proceed from enmity or prejudice, from partisan zeal or animosity, from favoritism and other improper in-

fluences and motives easy of concealment and difficult to be detected and exposed, it becomes unnecessary to suggest or comment upon the injustice capable of being wrought under cover of such a power, for that becomes apparent to every one who gives to the subject a moment's consideration. In fact, an ordinance which clothes a single individual with such power hardly falls within the domain of law, and we are constrained to pronounce it inoperative and void.'" These are words of far reaching import and great wisdom and are applicable to the question involved here. ˙ In fact, it would be a difficult thing to find in any law or in any act of any legislative body power more arbitrary and autocratic than that quoted in the ˙ charter of the city of Texarkana, and I do not understand how it is possible that the citizenship of Texas can be required to hold their rights, privileges, life and liberty under such arbitrary rules of autocratic power. Quotations like that taken from the decision of the United States Supreme Court, above enunciated, could be multiplied indefinitely, and from every court of last resort in the Federal Union. The stretch of arbitrary power under discriminating statutes when upheld will bring more than serious trouble in the end. Ours are a people who believe in an adherence to the law of the land, and have never when their attention has been called to it yielded to a desire for arbitrary discrimination or autocracy in any form. In this day of latitudinarianism and exceedingly liberal construction, it may be well enough for the judiciary to look well and guard closely against this character of vicious legislation. I am of opinion that section quoted is invalid, arbitrary and legally unjust, and should be held void.

I do not care to discuss the other questions, but some of those are, in my judgment, well taken, and should have been sustained. But I thought proper to make these remarks in regard. to the questions discussed. I therefore enter my dissent.