## J. M. King v. The State.

No. 3206.   Decided June 26, 1914.

Rehearing denied October 14, 1914.

1.—Loitering—Public School—Information— Words and Phrases.

Where, upon trial of unlawful loitering upon the public school ground, under the Act of 1905, section 70, chapter 124, the information alleged that the father of the alleged minor caused him to commit the offense, this was equivalent that he instigated him to commit the offense, under article 37, Penal Code, and the information was sufficient.

2.—Same—Sufficiency of the Evidence.

Where, upon trial of causing a minor to loiter on the public school ground, the evidence was sufficient to sustain the conviction, there was no reversible error.

3.—Same—Charge of Court—Practice on Appeal.

In the absence of an exception to the charge of the court or the failure of the court to give a requested charge in a misdemeanor case, the same can not be reviewed on appeal; besides, the requested charges were correctly refused. Following Basquez v. State, 56 Texas Crim. Rep., 239.

4.—Same—Loitering—Definition of Offense.

The word "loitering," as used in article 1514, Penal Code, should not be given a narrow restricted meaning, and where the act of loitering came clearly within the mischief sought to be remedied by the statute, the conviction was sustained.

5.—Same—Title of Act—Subject of Legislation—One Offense.

Where the Act of the Legislature, section 70, chapter 124, 1905, provided for a complete system of public free schools in Texas, the section making it a misdemeanor for any person to loiter or loaf upon any public school grounds, etc., was embraced in the subject of the title of the Act, and did not contravene section 35 of article 3 of the Constitution of Texas, and defined but one offense. Following Joliff v. State, 53 Texas Crim. Rep., 61, and other cases.

**6.—Same—Information—Pleading.**

It is never necessary to allege the evidence in the information, and when the allegation was that defendant caused the minor to commit the offense of loitering, etc., it was not necessary to allege the way or manner in which he caused or instigated it to be done.

**7.—Same—Knowledge of Defendant—Sufficiency of the Evidence—School Grounds.**

Where, upon trial of instigating a minor to loiter and loaf upon public school grounds, the evidence showed that the defendant not only knew of the minor's acts, but caused him to do them, the conviction was sustained, and the statute covers such acts done inside of the school building as well as on the grounds outside of the building.

Appeal from the County Court of Haskell. Tried below before the Hon. A. J. Smith.

Appeal from a conviction of causing a minor to loiter upon public school grounds; penalty, a fine of $15.

The opinion states the case.

*H. G. McConnell,* for appellant.

*C. E. Lane,* Assistant Attorney General, for the State.

HARPER, JUDGE.—The second count in the information alleges: "Gaylord Kline, county attorney as aforesaid, State aforesaid, in behalf of said State, further presents in the County Court of said County of Haskell, at the May term A. D. 1914, of said court, that J. M. King on or about the 17th day of March A. D. 1914 and before the filing of this information in the County of Haskell and State of Texas, who was then and there the father of Homer King, did then and there unlawfully cause the said Homer King, who was then and there a minor and under the control of the said J. M. King, to loiter and loaf upon the public school grounds of the Sagerton Public School, of the Sagerton Independent School District, in said county and State, during the session of said public school, after the said Homer King had been warned by Grace McCormick, the person in charge of said school, to leave said school grounds, and remain away therefrom, against the peace and dignity of the State."

Appellant moved to quash this count in the information on the ground that "no offense against the laws of the State of Texas is charged or alleged, and no act alleged in said second count to have been committed by the said J. M. King is in violation of any law of the State of Texas." Article 1514 of the Penal Code provides: "It shall be unlawful for any person to loiter or loaf upon any public school grounds in this State, during the session of such school, after being warned by the person in charge of such school to leave such grounds; providing a penalty of not less than $5 nor more than $25."

Article 37, Penal Code, reads: "When it shall appear that any minor was aided or instigated in the commission of an offense by a relation

in the ascending line, such relation shall receive double the punishment imposed by law in ordinary cases for the same offense," and by article 38 it is provided that any person under the age of twenty-one years is a minor.

Under these provisions of the Code we think this count in the information charges an offense against the laws, for when it alleges that he did then and there cause his son,. Homer King, a minor, to loiter on the school grounds, it is equivalent to alleging that he "instigated" Homer King to commit the offense, and a father who causes or instigates his minor son to commit any offense against the laws of this State commits an offense under article 37 of the Code.

The evidence offered in behalf of the State would show that Homer King is the fourteen year old son of appellant; that he was expelled from the Sagerton public school on March 16th, and was sent home on that day. His father being informed of the fact that Homer had been expelled, went to see some of the trustees, and when they would not act, he said he was going to send Homer back to school any way. He was informed by the trustees not to do that but to see the superintendent, and Homer did go back to the school in spite of the fact he had been expelled. ·Miss Grace McCormick testified: "I am the principal of the school. Yes, I expelled Homer King. He is 14 years old. I expelled him on the 16th day of March, 1914. The board in previous meeting authorized me to do so. I told him that he was expelled, and to take his books and leave the school and grounds and not to come back. I told him to take his books and go home. He said that if he was expelled it did not make any difference to me where he took his books. I told him no, but to take them away with him. He took his books and went away, went home I suppose. Yes, he came back to school the next morning just a little after school had taken up. I discovered him in the room, and called him out into the hall and told him that he should not have come back to school, that he was expelled and to get his books and leave. He told me that he was going to stay in school and that he was not going to leave; I told him that I would send for an officer if he did not go. He said that he was not afraid of me, nor the officers and that he was going to stay in school. He went on back into the room and sat down at his desk. I sent for an officer, Mr. Jones, to come after him. I think he is the constable or deputy sheriff. Yes, he came after him at recess." O. P. Smith testified he had a talk with appellant the day after Homer had been expelled from school, and appellant told him he had sent Homer back to school. Wiley Pennal testified that appellant told him he was going to send Homer back to school, and said that he was going to stay there; that he was going to show the trustees that they could not run things around there. That Homer was present when this conversation took place. W. H. Littlefield testified he was one of the trustees, and appellant told him if the trustees would not meet he was going to send Homer back to school. Deputy sheriff Jones said that appellant told

him he ought to have arrested him at first if he was going to arrest anybody; that he had no right to arrest the kid. If anybody was guilty he was as he had sent him back to school.

Appellant and his wife testified that it was Mrs. King who sent the boy back to school and not appellant. Mr. Smith testified that Mrs. King told him that it was Mr. King who had sent Homer back to school. It is thus seen that the testimony for the State was ample to support the verdict.

The only bill of exceptions in the record is the one relating to the sufficiency of the second count in the information, which we have here-inbefore discussed, and this being a misdemeanor, unless there was an exception reserved to the charge as given, or the failure of the court to give the special charges requested, we can not review those grounds of the motion for new trial. (Basquez v. State, 56 Texas Crim. Rep., 329.) But if we should consider the special charges, they present no error. The first was a request for a peremptory instruction, and this the court correctly refused. The second is that even if Homer King had been expelled from school and warned to remain away, that unless appellant knew that fact he would not be guilty. The evidence does not raise such an issue, for the testimony and all the testimony discloses that appellant was made aware that his son had been expelled; he admits this in his testimony; he goes to see the trustees in regard to the matter, and when he could not get them to act in the matter, the boy is deliberately and intentionally sent back to the school, without the consent and against the wishes of those in control of the school. We always regret to see anyone deprived of the advantages of school, yet discipline must be maintained or the school would be of advantage to none of the pupils. If a boy intentionally conducts himself in a way to render it necessary for the welfare of the school and the interest of all the other children, that he be expelled, parents, instead of complaining of the school authorities, should pay more attention to the conduct and behavior of their children. The record discloses that this is not the first time Homer had to be sent home on account of his conduct, and if under such circumstances, after being expelled, a child, over the protest of the teacher, can go into the school room, remain there, and when classes are called, deliberately go to the classes, take part therein against the will of the teacher and over her protest, there would be but little discipline and a great deal of disorder in the school room.

Appellant insists that if the boy, at the instance and command of his father, after being expelled and told not to return, did go to the school room, enter therein, and when told to go home, that he had been expelled, refused to do so and said that he was going to stay in school, and would not leave, remarking that he was not afraid of an officer, over the protest of the teacher going to a desk and seating himself, going to the classes, etc., ignoring the teacher and refusing to obey her, this would not constitute "loitering" on the school grounds

as the term is used in the Code. We can not agree that the word "loitering" should be given the narrow, restricted meaning contended for by appellant, but think the acts of the boy came clearly within the mischief sought to be remedied by the statute, and the facts authorizing the jury to find that he had been instigated and caused to do so b his father, the appellant, the judgment is affirmed.

*Affirmed.*

### ON REHEARING.

#### October 14, 1914.

HARPER, JUDGE.—Appellant in his motion for rehearing contends that we did not understand all of his grounds for contending that the information charged no offense, and he says that the law under which he was prosecuted provides for three separate and distinct offenses. The law under which appellant was prosecuted was adopted. in 1905, and is section 70 of chapter 124, which section reads as follows: "That it shall be unlawful for any person or persons to loiter or loaf upon any public school grounds in this State during the session of such school after being warned by the person in charge of such school to leave such grounds, and such person or persons so found shall be guilty of a misdemeanor, and upon conviction thereof shall be fined in any sum not less than five dollars and not to exceed twenty-five dollars." This is the only offense defined by that section of the Act, and appellant is in error in contending that at the time of the passage of the Act the section defining this offense also defined two other offenses. Other sections of the Act did define other offenses but the section defining this offense undertook to define no other offense. And the only question is, was the title of the Act broad and comprehensive enough to embrace the provisions of this section of the Act? The Act in question provided for a complete system of public free schools in Texas, and the first subdivision of the title reads: "An Act to provide for a more efficient system of public free schools for the State of Texas," and then follows a very lengthy title. Section 35 of article 3 of the Constitution does not provide that only one offense can be defined in a law, but the bill shall embrace but one subject, and the "subject" of this Act was the public free school system, and the provisions of section 70 of the Act hereinbefore recited are germane to that subject, and the whole purpose of the law. Joliff v. State, 53 Texas Crim. Rep., 61; Ex parte Abrams, 56 Texas Crim. Rep., 465; Singleton v. State, 53 Texas Crim. Rep., 625; Fahey v. State, 27 Texas Crim. App., 146; Brown v. State, 57 Texas Crim. Rep., 269.

Appellant also contends that the information is defective because "therein it is not alleged in what way or manner appellant caused the minor to commit the offense." This was a matter of proof, and it is never necessary to allege the evidence. When it was alleged that he caused the minor to commit the offense, it was required to prove

that fact, but it was not necessary to allege the *way* he caused or instigated it to be done.

The evidence in this case amply proves that appellant *knowingly* caused the minor to commit the offense, as is shown by the evidence copied in the original opinion. He knew his boy had been expelled from school, and Pennal testified that appellant said he was going to send his boy back to school, and that *he was going to stay there;* that he would show the trustees they could not run things. This evidenced that he not only knew his boy had been expelled, but the trustees had forbid his return to the school, yet he caused the boy to go back to the school and remain there over the protest of the teacher. It seems to take the law to teach appellant "that he and he alone could not run things around there" over the protest of the teacher and the trustees. The word "instigate" is defined in Century Dictionary to mean, "To stimulate to action or cause, made to do something, urge; to stir up; foment; bring about by persuasion or incitement, as to instigate a crime." Appellant not only urged his boy, according to the testimony for the State, but he required him to go to the school, and, as appellant said to the officer, he and not the boy was the one to arrest. The construction contended for by appellant that the statute only covers grounds outside of that on which the building stands is hardly tenable. The language is broad and comprehensive enough to cover acts done inside of the building on the grounds, as well as on the grounds outside of the building. To say he could be prosecuted for loitering on the grounds outside of the building, but if he goes inside and loiters there, interfering with the orderly conduct of the school, he would not violate the law, would give the statute an absurd and unreasonable construction.

The motion for rehearing is overruled.

*Overruled.*